Joel Shapiro, OSB #003814
joel@joelshapirolaw.com
Law Office of Joel Shapiro, LLC
1312 SW 16th Ave, 2nd Floor
Portland, Oregon 97201
(503) 224-5950
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| A.B., an individual, | Case No.:  3:19-cv-1992 |
| Plaintiff, | COMPLAINT |
| | Trafficking Victims Protection Reauthorization |
| v. | Act (18 U.S.C. § 1595) |
| HILTON WORLDWIDE HOLDINGS, INC.; | DEMAND FOR JURY TRIAL |
| WYNDHAM HOTELS & RESORTS, INC.; | |
| MARRIOTT INTERNATIONAL, INC.; | |
| CHOICE HOTELS CORPORATION; | |
| EXTENDED STAY AMERICA, INC.; and | |
| RED LION HOTELS CORPORATION, | |
| Defendant(s). | |

_____

**COMPLAINT**

COMES NOW the Plaintiff A.B., by and through the undersigned counsel, and respectfully

submits her complaint for damages and makes the following averments.

**INTRODUCTION**

1.  For years, sex trafficking ventures have brazenly operated in and out of hotels

COMPLAINT                              1

throughout this country. Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry continues to neglect the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2.    All Defendants, including Hilton Worldwide Holdings, Inc. (hereinafter "Hilton"), Wyndham Hotels & Resorts, Inc. (hereinafter "Wyndham"), Marriott International Inc., (hereinafter "Marriott"), Choice Hotels Corporation (hereinafter "Choice Hotels" or "Choice"), Extended Stay America, Inc. (hereinafter "ESA"), and Red Lion Hotels Corporation (hereinafter "RLHC")[1] know and have known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country. Rather than taking timely and effective measures to thwart this epidemic, Defendant Hotels have instead chosen to ignore the open and obvious presence of sex trafficking on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.    This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials A.B., under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

4.    A.B. was trafficked for commercial sex at the age of 22 years old in Oregon and Washington. In order to keep a roof over her head, she had to work for her share. A.B. was sold via commercial sex transactions at the Defendants' hotel properties through force, fraud, and coercion as the Defendants did nothing but profit.

5.    The Plaintiff now brings this action for damages against the Defendants listed herein. Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from

---

[1] Collectively, Hilton, Wyndham, Marriott, Choice, ESA, and RLHC may be referred to as "Defendant Hotels."

COMPLAINT                                    2

facilitating a venture that they knew, or at the very least should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6.   A.B. was advertised on www.backpage.com and sexually exploited at hotels in Salem and Portland, Oregon and Vancouver, Washington, including the DoubleTree, Days Inn Vancouver, Residence Inn Marriott, Extended Stay America, Rodeway Inn, and Red Lion Inn.

7.   As a direct and proximate result of Hilton, Wyndham, Marriott, Choice Hotels, ESA, and RLHC's consistent refusals to prevent human trafficking on their hotel properties, A.B. was sex trafficked, sexually exploited, and victimized repeatedly at Hilton, Wyndham, Marriott, and Choice, Extended Stay America, and Red Lion brand hotels.

8.   The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants who enabled, harbored, held, facilitated, or otherwise financially benefited, or any combination of the foregoing, from a sex trafficking venture in which A.B. was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

## PARTIES

9.   Plaintiff A.B. is a natural person who currently resides in St. Petersburg, Florida. During the time she was trafficked for sex, she was a resident and citizen of Oregon.

   a.   Plaintiff A.B. was 22 years old when she was first sold throughout Oregon and Washington for the purposes of commercial sex. The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14).

   b.   Due to the sensitive nature of the issues, Plaintiff A.B. requests this Court to

COMPLAINT                                    3

grant a protective order pursuant to Federal Rule of Civil Procedure 26(c) to permit her to proceed under a pseudonym to ensure Defendants keep Plaintiff's identity confidential throughout the pendency of the lawsuit thereafter. [2]

c. Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties. [3] However, there are exceptions when the issues involved are of a sensitive and highly personal nature. [4] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. [5]

d. Here, pseudonym status and to proceed under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiff fears stigma from her family, friends, employer, and community if her true identity was revealed in the public record.

e. Plaintiff should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interest substantially outweighs the customary practice of judicial openness. [6]

---

[2]     In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

[3]     Fed. R. Civ. P. 10(a).

[4]     A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir.); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992); *Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); *see also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).

[5]     Fed. R. Civ. P. 26(c).

[6]     *Supra* n. 2 at 1068 (the court joined its 4th, 5th, 10th, and 11th sister circuits in holding that a party may

COMPLAINT             4

    f.   Moreover, Defendants will not be prejudiced. Plaintiff will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff's identities in a manner that will compromise her personal life or future employment prospects.

10.   Defendants Hilton Worldwide Holdings, Inc. is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered agent, Corporation Service Company, at 251 Little Falls Drive Wilmington, Delaware 19808.

    a.   DoubleTree by Hilton ("DoubleTree") is a Hilton Worldwide Holdings, Inc. brand property.

    b.   Defendant Hilton and the DoubleTree® are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the DoubleTree® hotel where the Plaintiff was trafficked for sex. Defendant Hilton and the DoubleTree® each share the common policies and practices complained of herein.

    c.   Defendant Hilton and the DoubleTree® jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

    d.   As an integrated enterprise and/or joint employer, Defendant Hilton and the DoubleTree® are separately and jointly responsible for compliance with all

---

preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

applicable laws.

e. As an integrated enterprise and/or joint employer, Defendant Hilton and the DoubleTree® are jointly and severally liable for any damages caused by employees.

f. As hotel operator, Defendant Hilton controls the training and human trafficking or other related policies, including decisions on implementation and execution of policy for its branded properties including the DoubleTree hotel where A.B. was trafficked.

g. Through its relationship with the staff at the DoubleTree® where A.B. was trafficked and the perpetrator who trafficked A.B. at the DoubleTree® hotels, Defendant Hilton knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

h. Hilton benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked.

i. Hilton owns, supervises, and/or operates the DoubleTree® at 1000 NE Multnomah Street Portland, Oregon 97232.

11. Defendant Wyndham Hotels and Resorts, Inc. ("Wyndham") is one of the largest hotel brands in the world with nearly 9,000 branded properties in more than eighty (80) countries. It is a Delaware corporation and can be served by its registered agent, Corporate Creations Network, Inc., at 3411 Silverside Road, Tatnall Building Suite 104, Wilmington, Delaware 19810.

a. Defendant Wyndham Hotels and Resorts, Inc. is the successor entity to

COMPLAINT                                    6

Wyndham Worldwide Corporation. Defendant Wyndham Hotels and Resorts, Inc. retains successor liability for wrongful acts of its predecessor Wyndham Worldwide Corporation.

b.  Days Inn® by Wyndham ("Days Inn®") is a Wyndham Hotels and Resorts, Inc. brand property.

c.  Defendant Wyndham and the Days Inn® by Wyndham are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Days Inn® by Wyndham Defendant hotel where the Plaintiff was trafficked for sex. Defendant Wyndham and the Days Inn® by Wyndham each share the common policies and practices complained of herein.

d.  Defendant Wyndham and the Days Inn® jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

e.  As an integrated enterprise and/or joint employer, Defendant Wyndham and the Days Inn® are separately and jointly responsible for compliance with all applicable laws.

f.  As an integrated enterprise and/or joint employer, Defendant Wyndham and the Days Inn® are jointly and severally liable for any damages caused by employees.

g.  As a hotel operator, Defendant Wyndham controls the training and human trafficking or other related policies, including decisions on implementation and execution of policy for its branded properties including the Days Inn® hotel where A.B. was trafficked.

COMPLAINT                              7

   h.   Through its relationship with the staff at the Days Inn® where A.B. was trafficked and the perpetrator who trafficked A.B. at Days Inn® hotels while registered as a guest there, Defendant Wyndham knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

   i.   Wyndham benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked.

   j.   Wyndham owns, supervises, and/or operates the Days Inn® located at 9107 NE Vancouver Mall Drive Vancouver, WA 98662.

12.  Defendant Marriott International, Inc. ("Marriott") is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered agent CT Corporation System, 780 Commercial Street SE, Suite 100, Salem, Oregon 97301.

   a.   Residence Inn® by Marriott Portland Airport at Cascade Station ("Residence Inn®") is a Marriott brand property.

   b.   Defendant Marriott and the Residence Inn® are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Residence Inn® hotel where the Plaintiff was trafficked for sex. Defendant Marriott and the Residence Inn® each share the common policies and practices complained of herein.

   c.   Defendant Marriott and the Residence Inn® jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

   d.   As an integrated enterprise and/or joint employer, Defendant Marriott and the

COMPLAINT                   8

Residence Inn® are separately and jointly responsible for compliance with all applicable laws.

e.  As an integrated enterprise and/or joint employer, Defendant Marriott and the Residence Inn® are jointly and severally liable for any damages caused by employees.

f.  As hotel operator, Defendant Marriott controls the training and human trafficking or other related policies, including decisions on implementation and execution of policy for its branded properties including the Residence Inn® hotel where A.B. was trafficked.

g.  Defendant Marriott maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Marriott brand standards and all local, state, and federal laws.

h.  Through its relationship with the Residence Inn® hotel where A.B. was trafficked and the perpetrator who trafficked A.B. at the Residence Inn® hotel, Defendant Marriott knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

i.  Marriott benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked.

j.  Marriott owns, supervisors, and/or operates the Residence Inn® located at 9301 NE Cascades Parkway, Portland, Oregon 97220.

13.  Defendant Choice Hotels International, Inc. ("Choice Hotels") is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered

COMPLAINT                                    9

agent United States Corporation Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

    a.  Rodeway Inn® is a Choice Hotels brand property.

    b.  Defendant Choice and the Rodeway Inn® are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Rodeway Inn® hotel where the Plaintiff was trafficked for sex. Defendant Choice and the Rodeway Inn® each share the common policies and practices complained of herein.

    c.  Defendant Choice and the Rodeway Inn® jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

    d.  As an integrated enterprise and/or joint employer, Defendant Choice and the Rodeway Inn® are separately and jointly responsible for compliance with all applicable laws.

    e.  As an integrated enterprise and/or joint employer, Defendant Choice and the Rodeway Inn® are jointly and severally liable for any damages caused by employees.

    f.  As a hotel operator, Defendant Choice Hotels controls the training and human trafficking or other related policies, including decisions on implementation and execution of policy for its branded properties including the Rodeway Inn® hotel where A.B. was trafficked.[7]

    g.  Defendant Choice Hotels maintains that it considers guest safety and security

---

[7] The Rodeway Inn where Plaintiff was trafficked is currently a Howard Johnson hotel, a brand of Wyndham. However, during the time of Plaintiff's trafficking, the hotel was a Rodeway Inn, a brand of Choice Hotels.

to be important and requires the hotels in its portfolio to comply with Choice brand standards and all local, state, and federal laws.

    h.   Through its relationship with the staff at the Rodeway Inn® hotel where A.B. was trafficked and the perpetrator who trafficked A.B. at the Rodeway Inn®, Defendant Choice Hotels knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

    i.   Choice Hotels benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked.

    j.   Choice Hotels owns, supervises, and/or operates the Rodeway Inn® formerly located at 9201 NE Vancouver Mall Drive, Vancouver, Washington 98662.

14.   Defendant Extended Stay America, Inc. ("ESA") is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered agent CT Corporation System, 505 Union Avenue SE, Suite 120, Olympia, Washington 98501.

    a.   Extended Stay America – Portland – Vancouver ("Extended Stay America") is an ESA brand property.

    b.   Defendant ESA and the Extended Stay America® are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Extended Stay America® hotel where the Plaintiff was trafficked for sex. Defendant ESA and the Extended Stay America® each share the common policies and practices complained of herein.

    c.   Defendant ESA and the Extended Stay America® jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical

joint employment.

d.  As an integrated enterprise and/or joint employer, Defendant ESA and the Extended Stay America® are separately and jointly responsible for compliance with all applicable laws.

e.  As an integrated enterprise and/or joint employer, Defendant ESA and the Extended Stay America® are jointly and severally liable for any damages caused by employees.

f.  As a hotel operator, Defendant ESA controls the training and human trafficking or other related policies, including decisions on implementation and execution of policy for its branded properties including the Extended Stay America® hotel where A.B. was trafficked.

g.  Defendant ESA maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with ESA brand standards and all local, state, and federal laws.

h.  Through its relationship with the Extended Stay America® hotel where A.B. was trafficked and the perpetrator who trafficked A.B. at the Extended Stay America® hotel, Defendant ESA knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

i.  ESA benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked.

j.  ESA owns, supervisors, and/or operates the Extended Stay America® located at 11506 NE 3rd Street (Formerly 300 NE 115th Avenue prior to December

COMPLAINT                                    12

20, 2010) Vancouver, Washington 98684.

15.  Defendant Red Lion Hotels Corporation ("RLHC") is a large hotel brand. It is an Oregon corporation and can be served by its registered agent Corporate Creations, 5708 SE 136th Avenue, Suite 2, Portland, Oregon 97236.

    a.  Red Lion Inn® is a RLHC brand property.

    b.  Defendant RLHC and the Red Lion Inn® are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Red Lion Inn® hotel where the Plaintiff was trafficked for sex. Defendant RLHC and the Red Lion Inn® each share the common policies and practices complained of herein.

    c.  Defendant RLHC and the Red Lion Inn® jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

    d.  As an integrated enterprise and/or joint employer, Defendant RLHC and the Red Lion Inn® are separately and jointly responsible for compliance with all applicable laws.

    e.  As an integrated enterprise and/or joint employer, Defendant RLHC and the Red Lion Inn® are jointly and severally liable for any damages caused by employees.

    f.  As hotel operator, Defendant RLHC controls the training and human trafficking or other related policies, including decisions on implementation and execution of policy for its branded properties including the Red Lion Inn® hotel where A.B. was trafficked.

g. Defendant RLHC maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with RLHC brand standards and all local, state, and federal laws.

h. Through its relationship with the Red Lion Inn® hotel where A.B. was trafficked and the perpetrator who trafficked A.B. at the Red Lion Inn® hotel while registered as a guest there, Defendant RLHC knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

i. RLHC benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked.

j. RLHC owns, supervisors, and/or operates the Red Lion Inn® located at 3301 Market Street NE Salem, Oregon 97301.

16. Whenever reference is made in this Complaint to any act, deed, or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

17. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000).

18. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the

Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

19.  The requirements for liability under TVPRA § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

20.  Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion."  This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

21.  To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in the reverse. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can then be divided into the two (2) elements remaining: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

22.  Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is

nevertheless a long- recognized and familiar atrocity

## FACTUAL ALLEGATIONS

## A.  THE HOSPITALITY INDUSTRY'S PARTICIPATION
## IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation... Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-The Polaris Project[8]*

23.  Human trafficking is the world's fastest growing crime.[9] While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of ***all*** illegal drugs.[10]

24.  Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

25.  The hospitality industry plays a crucial role in the sex trade.[11] The trope of the "no-tell motel" is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

---

[8] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).

[9] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.

[10] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.

[11] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

COMPLAINT                                        16

26.    According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.[12] Traffickers and buyers alike frequently use hotel rooms to exploit victims.

27.    Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex. This is referred to as an 'in call'.

28.    Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels. In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[13]

29.    The problem is industry wide. In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[14]

30.    Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[15] Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce company-wide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond,

---

[12] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.
[13] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[14] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[15] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).

and/or establish safe and secure reporting mechanisms for those at the point of sale.

31.  Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur. [16]

32.  But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[17]

33.  Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs. [18]

34.  From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking

---

[16] *Combating Human Trafficking in the Hotel Industry*, HUFFPOST (Jul. 22, 2015), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754 (last visited November 18, 2019).
[17] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[18] DEPARTMENT  OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

COMPLAINT                                    18

under their flag.

35.    Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[19]

36.    Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[20] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the property level.

37.    Hospitality companies can and should mandate that *all* staff working at *all* hotel properties across their brand complete sex trafficking training.[21]

38.    The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

39.    At the General Assembly of the United Nations ("UN") convened in New York,

---

[19] *Id.* See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[20] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017),
http://scholarship.sha.cornell.edu/honorstheses/3.

[21] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp- content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

COMPLAINT                                        19

New York in November 2000, the Palermo Protocol to prevent, suppress, and punish trafficking in persons was adopted.[22]

40.    In this regard, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[23]

41.    The Code identifies the following six (6) steps companies can take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

42.    In 2010, the United States government released its Trafficking in Persons Report, which included an assessment of trafficking in the United States. The Trafficking in Persons Report 2010 stated that approximately 12.3 million adults and children were in forced labor, bonded labor, and force prostitution around the world, but that only 4,166 trafficking prosecutions were successful in 2009.[24]

43.    During a speech in New York City in September 2012, President Obama stated that human trafficking "ought to concern every person, because it is a debasement of our

---

[22] Protocol to Prevent, Suppress and Punish Trafficking in Persons, Especially Women and Children, supplementing the United Nations Convention against Transnational Organized Crime, *adopted* Nov. 15, 2000, 2237 U.N.T.S. 319.
[23] ECPAT-USA, *No Vacancy For Child Sex Traffickers Impact Report* (2017), *available at*:
https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/
NoVacany_Report.pdf.
[24] CNN Wire Staff, *U.S. human trafficking report includes U.S. cases for first time*, CNN.com (Jun. 14, 2010), available at https://www.cnn.com/2010/US/06/14/human.trafficking/index.html#.

COMPLAINT                                        20

common humanity. It ought to concern every community, because it tears at our social fabric. It ought to concern every business, because it distorts markets. It ought to concern every nation, because it endangers public health and fuels violence and organized crime."[25]

44.    Statistics released in 2014 by the International Labor Organization ("ILO") showed that approximately 4.5 million people were victims of forced sexual exploitation globally and that the violation of their human rights yielded an estimated annual profit of $99 billion dollars for sex traffickers worldwide.[26] Put another way, the numbers showed that a sex trafficker's annual profit per victim was approximately $22,000.00.[27]

45.    A scholarly article published in 2015 estimated that pimps could earn $25,000.00 to $33,000.00 per week selling in the Atlanta, Georgia area.[28] This volume of and profit from sex trafficking also aligned with internet advertising for the sex trafficking industry occurring in roughly the same time period. For example, in 2015, one advertisement in the Atlanta section of the www.backpage.com website triggered 181 clients, and calls or texts from twenty-seven (27) men expressing interest – in a span of just ninety (90) minutes.[29]

46.    In December 2015, President Obama appointed eleven (11) survivors of human trafficking to the inaugural United States Advisory Council on Human Trafficking to advise and make recommendations on federal anti-trafficking policies to the President's Interagency Task Force to Monitor and Combat Trafficking in Persons.[30]

47.    The United States Department of Justice ("DOJ") brought 248 sex trafficking

---

[25] President Barack Obama, Remarks to the Clinton Global Initiative (Sept. 25, 2012), *available at* https://obamawhitehouse.archives.gov/the-press-office/2012/09/25/remarks-president-clinton-global-initiative.
[26] International Labour Office, *Profits and Poverty: The Economics of Forced Labour* (2014), at 13, *available at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf.
[27] *Id.* at 15.
[28] Sarkisian, supra n.14, at 4.
[29] *Id.* at 5.
[30] U.S. Dep't of State, *2016 Trafficking in Persons Report* (2016), at 41, *available at* https://www.state.gov/documents/organization/258876.pdf.

prosecutions in Fiscal Year 2015 and secured convictions against 291 sex traffickers.[31] In the previous year, DOJ convicted a total of 184 human traffickers (inclusive of labor trafficking) and in the subsequent year, DOJ convicted a total of 439 human traffickers (inclusive of labor trafficking).[32]

48.    Despite these efforts of governmental and non-governmental organizations to combat human trafficking, the hospitality industry as a whole, continued to lag behind in its efforts to prevent human trafficking. A 2015 study showed that forty-five percent (45%) of children who suffered sexual exploitation report that the sexual exploitation took place in a hotel.[33]

49.    Even estimates by attorneys *for the* hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[34] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.[35]

50.    Between 2007 and March 2015, more than 1,400 human trafficking cases have been reported to the National Trafficking Resource Center.[36]

51. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement.

---

[31] *Id.* at 389.

[32] Human Rights First, *Fact Sheet 2017* (2017), *available at* http://www.humanrightsfirst.org/sites/default/files/TraffickingbytheNumbers.pdf.

[33] Sarkisian, *supra* n.14.

[34] Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).

[35] U.S. Dep't of State, *supra* n.29, at 387.

[36] Polaris, *Human Trafficking and the Hotel Industry* (2015), *available at* https://polarisproject.org/resources/human-trafficking-and-hotel-industry.

COMPLAINT                                    22

Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with hotel chains – they know it is unlikely that they will be disturbed.

52. Due to the hospitality industry's failure to embrace anti-trafficking policies and practices, children and other vulnerable persons are trafficked for sex in hotels throughout the United States.

53. In 2011, Wyndham Hotels trained only some of its employees to look for signs of trafficking.[37]

54. In 2012, an anti-trafficking coalition alerted Defendants Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[38]

55. Choice Hotels claims it has supported the anti-trafficking group Polaris since 2010 and in a partnership with ECPAT (End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes) developed a training module in 2010 for hotel management and staff.[39]

56. Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the

---

[37] Katie Lobosco, *Super 8 workers trained to spot sex trafficking*, CNN BUSINESS (Nov. 18, 2014), https://money.cnn.com/2014/11/18/news/companies/days-inn-sex-trafficking/.
[38] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).
[39] *Human Rights Policy*, CHOICE HOTELS, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited June 6, 2019).

COMPLAINT                                23

Department of Homeland Security's Blue Campaign.[40] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[41]

57. Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

### A. THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

58. Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or a third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract and still profits from putting heads in beds.

59. The average consumer does not see this relationship. The parent brand gives the franchisee property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand. The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

60. In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand

---

[40] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.
[41] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).

COMPLAINT                                    24

provides the franchise hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website. Thus, booking and room reservations are controlled by the corporate parent brand.[42]

61. The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

62. Per the franchise agreement, the parent brand may enforce these standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

63. At the time of the incidents alleged herein:

    a. Defendant Hilton owned and controlled the DoubleTree® brand.

    b. Defendant Wyndham owned and controlled the Days Inn® brand.

    c. Defendant Marriott owned and controlled the Residence Inn® brand.

    d. Defendant Choice Hotels Corporation owned and controlled the Rodeway Inn® brand.

    e. Defendant Extended Stay America, Inc. owned and controlled the Extended Stay America® brand.

    f. Defendant Red Lion Hotels Corporation owned and controlled the Red Lion Inn® brand.

64. Parent hotel brands may kick delinquent hotels out of their system but it is at the expense of terminating their royalty payments.

---

[42] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

## B. THE DEFENDANTS' ACTUAL AND/OR CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT THEIR HOTELS

65.    Defendants Hilton, Wyndham, Marriott, Choice Hotels, ESA, and RLHC ("Defendant Hotels") have been on notice of repeated incidences of sex trafficking occurring at their DoubleTree, Days Inn®, Rodeway Inn, Residence Inn, Extended Stay America, and Red Lion Inn hotels yet these brand managers failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

66.    Several courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence.[43]

67.    HILTON WORLDWIDE HOLDINGS, INC. ("HILTON"):

a.    Defendant Hilton owns, supervises, or operates the DoubleTree located at 1000 NE Multnomah Street Portland, Oregon 97232. Hilton failed to implement and enforce any of its own policy or policies and protect Plaintiff A.B. from being sex trafficked.

b.    Defendant Hilton had actual knowledge of sex trafficking occurring on its branded hotel properties because Hilton and DoubleTree knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Hilton and DoubleTree allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the DoubleTree. Hilton and DoubleTree facilitated the trafficking through its practices, policies,

---

[43] *See Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009); *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *12 (.E.D. Tenn. May 29, 2007).

and procedures. Hilton and DoubleTree failed to take appropriate action to prevent the trafficking of individuals for sex so that Hilton and DoubleTree could continue to profit from the business that trafficking brings, including business from out-of-state.

c.  Defendant Hilton had constructive knowledge of sex trafficking occurring on its branded hotel properties because Hilton and DoubleTree knew or should have known that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Hilton and DoubleTree allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the DoubleTree. Hilton and DoubleTree facilitated the trafficking through its practices, policies, and procedures. Hilton and DoubleTree failed to take appropriate action to prevent the trafficking of individuals for sex so that Hilton and DoubleTree could continue to profit from the business that trafficking brings, including business from out-of-state.

d.  Hilton knew or should have known that the DoubleTree hotel where Plaintiff A.B. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked.

e.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Hilton has repeatedly failed to stop these actions.

f.  Defendant Hilton exercised control over DoubleTree hotels by:

COMPLAINT                                27

    i.  distributing information to assist employees in identifying human trafficking;

    ii.  providing a process for escalating human trafficking concerns within the organization;

    iii.  requiring employees to attend training related to human trafficking;

    iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to DoubleTree® branded hotels through webinars, seminars, conferences, and online portals;

    vi.  developing and holding ongoing training sessions on human trafficking; or

    vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Hilton was in an agency relationship with DoubleTree® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Hilton's exercise of an ongoing and systemic right of control over DoubleTree® hotels by Defendant Hilton's operations, including the means and methods of how DoubleTree® branded hotels conducted daily business through one or more of the following actions:

    i.  hosting online bookings on Defendant Hilton's domain;

    ii.  requiring DoubleTree® branded hotels to use Defendant Hilton's customer rewards program;

  iii. setting employee wages;

  iv. making employment decisions;

  v. advertising for employment;

  vi. sharing profits;

  vii. standardized training methods for employees;

  viii. building and maintaining the facility in a manner specified by the owner;

  ix. standardized or strict rules of operation;

  x. regular inspection of the facility and operation by owner;

  xi. fixing prices; or

  xii. other actions that deprive DoubleTree® branded hotels of independence in business operations.

h. An apparent agency also exists between Defendant Hilton and DoubleTree® hotels.

Defendant Hilton held out DoubleTree® branded hotels to the public as possessing authority to act on its behalf.

i. Given Defendant Hilton's public statements[44] on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including DoubleTree® branded hotels, Defendant Hilton breached its duties in the following ways:

  i. did not adequately distribute information to assist employees in identifying human trafficking;

---

[44] Upon information and belief, Hilton joined ECPAT, at the latest, in 2011. *See* Hilton Worldwide Signs Tourism Code of Conduct, Joins ECPAT-USA in Fight Against Child Trafficking in the Travel Sector, HILTON NEWSROOM (Apr. 14, 2011), https://newsroom.hilton.com/corporate/news/hilton-worldwide-signs-tourism-code-of-conduct-joins-ecpatusa-in-fight-against-child-trafficking-in-the-travel-sector.

COMPLAINT     29

ii.   failed to provide a process for escalating human trafficking concerns within the organization;

iii.   failed to mandate managers, employees, or owners attend training related to human trafficking;

iv.   failed to provide new hire orientation on human rights and corporate responsibility;

v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi.   failed to develop and hold or require ongoing training sessions on human trafficking; or

vii.   failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.   For years, Defendant Hilton has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs on its DoubleTree® branded properties throughout the country. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of Plaintiff A.B. at DoubleTree® hotels that forms the basis of this complaint.

i.   Ashley Benson, a victim of human sex trafficking, had been involved in the dangerous world of prostitution as early as 2011 and was murdered by a john at the DoubleTree in Portland, Oregon.[45] The DoubleTree

---

[45] Brent Weisberg, *Details revealed in Ashley Benson sex trafficking*, KOIN.com (Jan. 22, 2015),

allowed the john to pay for his room with cash despite displaying several red flags such as checking in late at night without any luggage.[46]

ii.    In January of 2016, a Colorado grand jury indicted seven people who are accused of running a child sex trafficking ring in Denver, Colorado. Members rented rooms at various hotels including a Doubletree Hotel, the Warwick Hotel, the Commons Hotel, the Red Lion Hotel and a Motel 6, then forced the victims to engage in commercial sex acts while pocketing the victims' earnings.[47]

iii.    In April of 2018, eleven (11) men from the Baltimore and Washington, D.C. area were arrested in a prostitution sting operation at a DoubleTree Hotel in Columbia, MD.[48]

iv.    Additionally, Defendant Hilton has been aware of sex trafficking on DoubleTree brand properties through publicly available websites such as www.tripadvisor.com. Online reviews show the pervasiveness of customer reported sex trafficking on Days Inn brand properties and Defendant Hilton's inattentiveness, for example:

● In September of 2009, a reviewer described a DoubleTree in Milan, Italy as follows: "The hotel is in the middle of nowhere and if you don't mind seeing prostitutes stood in their underwear

https://www.koin.com/news/details-revealed-in-ashley-benson-sex-trafficking/.

[46] Id.

[47] Hsing Tseng, Seven indicted by Colorado grand jury in child sex trafficking ring bust, KDVR.COM (Jan. 6, 2016), available at https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/

[48] Bryna Zumer, 11 men arrested in prostitution sting at Columbia hotel, FOX 45 NEWS (Apr. 6, 2018), available at https://foxbaltimore.com/news/local/11-men-arrested-in-prostitution-sting-at-columbia-hotel

COMPLAINT                                    31

outside the hotel then go for it!"[49]

    v.    Hilton and DoubleTree allowed, authorized, permitted, induced, or encouraged the trafficking of women and children for sex at the DoubleTree. Hilton and DoubleTree facilitated the trafficking through its practices, policies, and procedures.

    vi.    Hilton and DoubleTree failed to take appropriate action to prevent the trafficking of women and children for sex so that Hilton and DoubleTree could continue to profit from the business that trafficking brings, including business from out-of-state.

    vii.    A.B. was repeatedly sold by a pimp for sex at the DoubleTree.

68.    WYNDHAM HOTELS AND RESORTS, INC. ("WYNDHAM"):

    a.    For years Defendant Wyndham has been on notice of repeated incidences of sex trafficking occurring on its Days Inn® by Wyndham branded properties, yet Defendant Wyndham has failed to take action to prevent sex trafficking at Days Inn® by Wyndham brand properties and still persists in failing to take necessary action to prevent sex trafficking on its properties. Defendant Wyndham's inattention in this regard enabled and contributed to the sex trafficking the Plaintiff suffered at the Days Inn® by Wyndham hotel.

    b.    There are numerous examples across place and time of Defendant Wyndham's knowledge of sex trafficking on its branded properties and its continued, total inattention to preventing and remedying the blight of human trafficking on the lives and liberties of its victims.

---

[49] Review of DoubleTree by Hilton Milan, Milan, Italy (Sept. 2, 2009), available at https://www.tripadvisor.com/ShowUserReviews-g187849-d1175769-r39593198-Doubletree_by_Hilton_Milan-Milan_Lombardy.html.

COMPLAINT              32

c.   In 2011, Defendant Wyndham's predecessor entity Wyndham Worldwide Corporation, signed the Code, but as evidenced by the widespread sex trafficking which continued to occur at Defendant Wyndham's branded properties, Defendant Wyndham did not practice what it preached. Defendant Wyndham's adoption of the Code appears to have been nothing more than a strategic maneuver through which it sought a shield against liability, but not a sword against human trafficking.

d.   Despite Defendant Wyndham's anti-trafficking stance, Defendant Wyndham failed to implement and enforce any of its own policy or policies including with respect to the Days Inn® by Wyndham. Defendant Wyndham knew or should have known that the Days Inn® by Wyndham was located in an area known for sex trafficking activity, and sex trafficking and prostitution continued to regularly occur on and around their branded hotel premises, including when A.B. was trafficked.[50] Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its branded hotels, Defendant Wyndham failed to take adequate measures to prevent the misconduct.

e.   Defendant Wyndham owns, supervises, or operates the Days Inn® located at

---

[50] *See, e.g., Alexis Stevens,* Atlanta Journal-Constitution, *Four Accused Of Running Prostitution Ring At Clayton County Hotels* (Jan. 12, 2016), https://www.ajc.com/news/crime--law/accused-running-prostitution-ring-claytoncounty-
hotels/gPhfieHiNuiov9xM0CmmJO/ (undercover investigation leads to arrests at Atlanta-area Days Inn by Wyndham); *Brian Newlin,* ClickOnDetroit.com, *Man Accused Of Getting Women Hooked On Drugs, Forcing Them Into Prostitution In Southeast Michigan* (Mar. 28, 2018), https://www.clickondetroit.com/news/man-accused-offorcing-
women-into-prostitution-in-southeast-michigan (three women held against their will and forced into prostitution at Days Inn); *Matt Johnson,* WSBTV-Atlanta, *Fourteen-Year-Old Among Girls Saved From Motel Prostitution Ring, Police Say* (Mar. 9, 2018), https://www.wsbtv.com/news/local/cobb-county/14-year-old-amonggirls-
saved-from-motel-prostitution-sting-police-say/713242739 (police save 14-year-old from pimps at Days Inn); *Andrea Gallo,* The Advocate, *Baton Rouge Passes Ordinance To Curb Sex Trafficking, Drugs, Prostitution At Hotels* (Jan. 24, 2018), https://www.theadvocate.com/baton_rouge/news/article_ac478eb0-0132-11e8-be36-6bb6c3a45ac0.html (frequency of police calls from Days Inn leads to action by Baton Rouge City Council).

COMPLAINT                                    33

9107 NE Vancouver Mall Drive Vancouver, WA 98662. Wyndham failed to implement and enforce any of its own policy or policies and protect Plaintiff A.B. from being sex trafficked.

f.  Defendant Wyndham had actual knowledge of sex trafficking occurring on its branded hotel properties because Wyndham and Days Inn knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Wyndham and Days Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Days Inn. Wyndham and Days Inn facilitated the trafficking through its practices, policies, and procedures. Wyndham and Days Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that Wyndham and Days Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

g.  Defendant Wyndham had constructive knowledge of sex trafficking occurring on its branded hotel properties because Wyndham and Days Inn knew or should have known that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Wyndham and Days Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Days Inn. Wyndham and Days Inn facilitated the trafficking through

COMPLAINT                    34

its practices, policies, and procedures. Wyndham and Days Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that Wyndham and Days Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

h.  Wyndham knew or should have known that the Days Inn® hotel where Plaintiff A.B. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked.

i.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Wyndham has repeatedly failed to stop these actions.

j.  Defendant Wyndham exercised control over Days Inn® hotels by:

   i.  distributing information to assist employees in identifying human trafficking;

   ii.  providing a process for escalating human trafficking concerns within the organization;

   iii.  requiring employees to attend training related to human trafficking;

   iv.  providing new hire orientation on human rights and corporate responsibility;

   v.  providing training and education to Days Inn® branded hotels through webinars, seminars, conferences, and online portals;

   vi.  developing and holding ongoing training sessions on human trafficking; or

      vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

k.  Wyndham was in an agency relationship with Days Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Wyndham's exercise of an ongoing and systemic right of control over Days Inn® hotels by Defendant Wyndham's operations, including the means and methods of how Days Inn® branded hotels conducted daily business through one or more of the following actions:

      i.   hosting online bookings on Defendant Wyndham's domain;

      ii.   requiring Days Inn® branded hotels to use Defendant Wyndham's customer rewards program;

      iii.   setting employee wages;

      iv.   making employment decisions;

      v.   advertising for employment;

      vi.   sharing profits;

      vii.   standardized training methods for employees;

      viii.   building and maintaining the facility in a manner specified by the owner;

      ix.   standardized or strict rules of operation;

      x.   regular inspection of the facility and operation by owner;

      xi.   fixing prices; or

      xii.   other actions that deprive Days Inn® branded hotels of independence in business operations.

l.  An apparent agency also exists between Defendant Wyndham and Days Inn®
hotels. Defendant Wyndham held out Days Inn® branded hotels to the public
as possessing authority to act on its behalf.

m.  Given Defendant Wyndham's public statements on behalf of its hotel brands
and the control it assumed in educating, implementing, and directing its
branded hotels, including Days Inn® branded hotels, Defendant Wyndham
breached its duties in the following ways:

    i.  did not adequately distribute information to assist employees in
identifying human trafficking;

    ii.  failed to provide a process for escalating human trafficking concerns
within the organization;

    iii.  failed to mandate managers, employees, or owners attend training
related to human trafficking;

    iv.  failed to provide new hire orientation on human rights and corporate
responsibility;

    v.  failed to provide training and education on human trafficking through
webinars, seminars, conferences, and online portals;

    vi.  failed to develop and hold or require ongoing training sessions on
human trafficking; or

    vii.  failed to provide checklists, escalation protocols and information to
property management staff or tracking performance indicators and key
metrics on human trafficking prevention.

n.  For years, Defendant Wyndham has demonstrated actual and/or constructive

knowledge of the rampant culture of sex trafficking which tragically occurs on its Days Inn® branded properties throughout the country. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of Plaintiff A.B. at Days Inn® hotels that forms the basis of this complaint.

    i. In July 2008, a woman was arrested during a police stakeout at a Days Inn and charged with prostitution for allegedly trading sex for gasoline, while the buyer was charged with promoting prostitution.[51]

    ii. In February 2010, a prostitution sting that started with a Craigslist ad ended with three metro Atlanta women and a 15-year-old Atlanta girl being arrested at a Days Inn hotel.[52]

    iii. In March 2010, a high-profile personal injury lawyer was arrested by Petersburg Police at a Travelodge motel on charges of soliciting a prostitute.[53]

    iv. Additionally, Defendant Wyndham has been aware of sex trafficking on Days Inn brand properties through publicly available websites such as www.tripadvisor.com. Online reviews show the pervasiveness of customer reported sex trafficking on Days Inn brand properties and Defendant Wyndham's inattentiveness, for example:

        • In September of 2007, a reviewer described a Days Inn in

---

[51] Sex for Gas, THE SMOKING GUN (Jul. 2, 2008), http://www.thesmokinggun.com/documents/crime/sex-gas.

[52] Larry Hartstein, *Craigslist prostitution sting nets 4 arrests*, THE ATLANTA JOURNAL-CONSTITUTION (Feb. 9, 2010), https://www.ajc.com/news/local/craigslist-prostitution-sting-nets-arrests/HvY72Eh4nKE1Ej7jo4WIyH/

[53] *Top Lawyer Arrested for Soliciting Prostitute*, STYLE WEEKLY (Apr. 28, 2010), https://www.styleweekly.com/richmond/top-lawyer-arrested-for-soliciting-prostitute/Content?oid=1383889.

COMPLAINT                  38

Spartanburg, South Carolina as follows: "When leaving the room, two prostitutes informed us that, "We've used most of the rooms here and they were fine." We left and stayed at the Choice Inn across the road."[54]

- In October of 2012, a reviewer described the Days Inn in Fort Myers, Florida as follows: "thought I was staying in a crackhead/prostitute hotel. [Y]our corporate office [should] really look at this place. [T]here were hookers conducting business right outside my front door and [I] had my children with me!"[55]

- In August of 2015, a reviewer described the Days Inn in Fort Myers, Florida as follows: "This motel is filled with drug dealers and prostitutes. The owner/[management] is well aware of this and does nothing about it. While there a woman overdosed and the police were there four times in other drug related issues... "[56]

69.    MARRIOTT INTERNATIONAL, INC. ("MARRIOTT"):

    a.    Defendant Marriott owns, supervises, or operates the Residence Inn® located at 9301 NE Cascades Parkway, Portland, Oregon 97220. Marriott failed to

---

[54] Review of Days Inn by Wyndham Spartanburg Waccamaw, Spartanburg, SC (Sept. 29, 2007), *available at* https://www.tripadvisor.com/ShowUserReviews-g54448-d97597-r10019529-Days_Inn_by_Wyndham_Spartanburg_Waccamaw-Spartanburg_South_Carolina.html.

[55] Review of Days Inn by Wyndham Fort Myers, Fort Myers, FL (Oct. 10, 2012), *available at* https://www.tripadvisor.com/ShowUserReviews-g34230-d84524-r142467996-Days_Inn_by_Wyndham_Fort_Myers-Fort_Myers_Florida.html.

[56] Review of Days Inn by Wyndham Fort Myers, Fort Myers, FL (Aug. 1, 2015), *available at* https://www.tripadvisor.com/ShowUserReviews-g34230-d84524-r294688173-Days_Inn_by_Wyndham_Fort_Myers-Fort_Myers_Florida.html.

implement and enforce any of its own policy or policies and protect Plaintiff A.B. from being sex trafficked.

b. Defendant Marriott had actual knowledge of sex trafficking occurring on its branded hotel properties because Marriott and Residence Inn knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Marriott and Residence Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Residence Inn. Marriott and Residence Inn facilitated the trafficking through its practices, policies, and procedures. Marriott and Residence Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that Marriott and Residence Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

c. Defendant Marriott had constructive knowledge of sex trafficking occurring on its branded hotel properties because Marriott and Residence Inn knew or should have known that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Marriott and Residence Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Residence Inn. Marriott and Residence Inn facilitated the trafficking through its practices, policies, and procedures.

COMPLAINT                                          40

Marriott and Residence Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that Marriott and Residence Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

d.   Marriott knew or should have known that the Residence Inn® hotel where Plaintiff A.B. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked.

e.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Marriott has repeatedly failed to stop these actions.

f.   Defendant Marriott exercised control over Residence Inn® hotels by:

i.   distributing information to assist employees in identifying human trafficking;

ii.   providing a process for escalating human trafficking concerns within the organization;

iii.   requiring employees to attend training related to human trafficking;

iv.   providing new hire orientation on human rights and corporate responsibility;

v.   providing training and education to Residence Inn® branded hotels through webinars, seminars, conferences, and online portals;

vi.   developing and holding ongoing training sessions on human trafficking; or

COMPLAINT                                      41

vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Marriott was in an agency relationship with Residence Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Marriott's exercise of an ongoing and systemic right of control over Residence Inn® hotels by Defendant Marriott's operations, including the means and methods of how Residence Inn® branded hotels conducted daily business through one or more of the following actions:

    i.  hosting online bookings on Defendant Marriott's domain;

    ii.  requiring Residence Inn® branded hotels to use Defendant Marriott's customer rewards program;

    iii.  setting employee wages;

    iv.  making employment decisions;

    v.  advertising for employment;

    vi.  sharing profits;

    vii.  standardized training methods for employees;

    viii.  building and maintaining the facility in a manner specified by the owner;

    ix.  standardized or strict rules of operation;

    x.  regular inspection of the facility and operation by owner;

    xi.  fixing prices; or

    xii.  other actions that deprive Residence Inn® branded hotels of independence in business operations.

COMPLAINT                                    42

h. An apparent agency also exists between Defendant Marriott and Residence Inn®
hotels. Defendant Marriott held out Residence Inn® branded hotels to the public
as possessing authority to act on its behalf.

i. Given Defendant Marriott's public statements on behalf of its hotel brands and
the control it assumed in educating, implementing, and directing its branded
hotels, including Residence Inn® branded hotels, Defendant Marriott breached
its duties in the following ways:

    i. did not adequately distribute information to assist employees in
identifying human trafficking;

    ii. failed to provide a process for escalating human trafficking concerns
within the organization;

    iii. failed to mandate managers, employees, or owners attend training
related to human trafficking;

    iv. failed to provide new hire orientation on human rights and corporate
responsibility;

    v. failed to provide training and education on human trafficking through
webinars, seminars, conferences, and online portals;

    vi. failed to develop and hold or require ongoing training sessions on
human trafficking; or

    vii. failed to provide checklists, escalation protocols and information to
property management staff or tracking performance indicators and key
metrics on human trafficking prevention.

j. For years, Defendant Marriott has demonstrated actual and/or constructive

knowledge of the rampant culture of sex trafficking which tragically occurs on its Residence Inn® branded properties throughout the country. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of Plaintiff A.B. at Residence Inn® hotels that forms the basis of this complaint.

    i. In January 2009, the first "john" was prosecuted in connection with Charlotte's high-priced prostitution ring after being seen leaving Room 106 of the Residence Inn.[57]

    ii. In October 2009, the Westchester County District Attorney arrested three women on charges for promoting prostitution. The three women recruited, managed, and scheduled nearly a dozen women, sending them on calls to hotels all over the city, including the Residence Inn.[58]

    iii. In August 2010, a prostitute's boyfriend ended up dead at the Residence Inn when a john thought he had been robbed and came back with a gun.[59] As a result, the hotels worked with police to prevent prostitution rings from operating out of the hotel rooms and the police educated them on how to spot suspicious activity.[60]

    iv. In February 2015, seven men were arrested at the Residence Inn in Wilmette for engaging in prostitution during an undercover prostitution

---

[57] Gary L. Wright, *Charlotte businessman faces prostitution charge*, THE HERALD (Jan. 7, 2009), https://www.heraldonline.com/news/local/article12247145.html.

[58] *Prostitution bust in Westchester Co.*, ABC 7 NY (Oct. , 2009), https://abc7ny.com/archive/7055026/.

[59] Police target prostitution at airport hotels, THE PHILADELPHIA INQUIRER (Aug. 19, 2010), https://www.inquirer.com/philly/news/breaking/20100819_Police__Airport_hotels_becoming_hubs_for_prostitution .html.

[60] *Id.*

sting.[61]

     v.   In February 2018, a former Utah lawmaker was accused of purchasing two hotel rooms at the Residence Inn using taxpayer money to meet with a prostitute.[62] His 2017 campaign finance report showed an expense for $1,510 for "extra hotel expense session lodging" at the "Marriott Residence."[63]

70.   CHOICE HOTELS CORPORATION ("Choice Hotels" or "Choice")

     a.   Defendant Choice Hotels owned, supervised, or operated the former Rodeway Inn® formerly located at 9201NE Vancouver Mall Drive, Vancouver, Washington 98662.[64]

     b.   Choice Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff A.B. from being sex trafficked.

     c.   Defendant Choice had actual knowledge of sex trafficking occurring on its branded hotel properties because Choice and Rodeway Inn knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Choice and Rodeway Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Rodeway Inn. Choice and Rodeway Inn facilitated the trafficking through its

---

[61] *Prostitution Sting Arrests Five in Wilmette*, DAILY NORTH SHORE (Feb. 13, 2015), https://jwcdaily.com/2015/02/13/prostitution-sting-arrests-five-in-wilmette/.
[62] Utah taxpayers paid for hotel linked to prostitute report, APNEWS (Feb. 9, 2018), https://www.apnews.com/9692f9fa6a82467093dc0d250a2dd44e.
[63] *Id.*
[64] The former Rodeway Inn by Choice Hotels is now a Howard Johnson hotel, owned by Wyndham.

practices, policies, and procedures. Choice and Rodeway Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that Choice and Rodeway Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

d. Defendant Choice had constructive knowledge of sex trafficking occurring on its branded hotel properties because Choice and Rodeway Inn knew or should have known that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. Choice and Rodeway Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Rodeway Inn. Choice and Rodeway Inn facilitated the trafficking through its practices, policies, and procedures. Choice and Rodeway Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that Choice and Rodeway Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

e. Choice Hotels knew or should have known that the Rodeway Inn® hotel where Plaintiff A.B. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked.

f. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Choice Hotels has repeatedly failed to stop these actions.

COMPLAINT                                    46

g.  Defendant Choice Hotels exercised control over Rodeway Inn® hotels by:

    i.  distributing information to assist employees in identifying human trafficking;

    ii.  providing a process for escalating human trafficking concerns within the organization;

    iii.  requiring employees to attend training related to human trafficking;

    iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Rodeway Inn® branded hotels through webinars, seminars, conferences, and online portals;

    vi.  developing and holding ongoing training sessions on human trafficking; or

    vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

h.  Choice Hotels was in an agency relationship with Rodeway Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Choice's exercise of an ongoing and systemic right of control over Rodeway Inn® hotels by Defendant Choice's operations, including the means and methods of how Rodeway Inn® branded hotels conducted daily business through one or more of the following actions:

    i.  hosting online bookings on Defendant Choice Hotels' domain;

    ii.  requiring Rodeway Inn® branded hotels to use Defendant Choice

Hotels' customer rewards program;

   iii.  setting employee wages;

   iv.  making employment decisions;

   v.  advertising for employment;

   vi.  sharing profits;

   vii.  standardized training methods for employees;

   viii.  building and maintaining the facility in a manner specified by the owner;

   ix.  standardized or strict rules of operation;

   x.  regular inspection of the facility and operation by owner;

   xi.  fixing prices; or other actions that deprive Rodeway Inn® branded hotels of independence in business operations.

i.  An apparent agency also exists between Defendant Choice Hotels and Rodeway Inn® hotels. Defendant Choice Hotels held out Rodeway Inn® branded hotels to the public as possessing authority to act on its behalf.

j.  Given Defendant Choice Hotels' public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Rodeway Inn® branded hotels, Defendant Choice Hotels breached its duties in the following ways:

   i.  did not adequately distribute information to assist employees in identifying human trafficking;

   ii.  failed to provide a process for escalating human trafficking concerns within the organization;

COMPLAINT           48

iii. failed to mandate managers, employees, or owners attend training related to human trafficking;

iv. failed to provide new hire orientation on human rights and corporate responsibility;

v. failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. failed to develop and hold or require ongoing training sessions on human trafficking; or

vii. failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

k. For years, Defendant Choice Hotels has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs on its Rodeway Inn® branded properties throughout the country. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of Plaintiff A.B. at Rodeway Inn® hotels that forms the basis of this complaint.

i. In April of 2010, a woman was brought to the Rodeway Inn in an area known for prostitution, beaten, and forced into a 3-by-5 foot dog cage when she tried to escape her traffickers.[65]

ii. In October of 2010, a Jersey City man and a New York City prostitute

---

[65] Kealan Oliver, *Atlanta Woman Caged Like Dog; Beaten, Locked Up for Trying to Escape Prostitution, Says Cops*, CBS NEWS (Apr. 6, 2010), https://www.cbsnews.com/news/atlanta-woman-caged-like-dog-beaten-locked-up-for-trying-to-escape-prostitution-say-cops/.

robbed and murdered a man at the Rodeway Inn.[66]

iii. In April of 2013, police conducted a prostitution sting and arrested 11 men at a Rodeway Inn in Eau Claire, Wisconsin.[67]

iv. In October 2013, a man used two women in order to run a prostitution ring of minor girls from his jail cell. The woman would recruit girls, get them addicted to heroin and post them on backpage.com. Police arrested the women at the Rodeway Inn® in Watertown, New York.[68]

v. In June 2015, a man brought a woman and two minors across state lines from Wyoming to Dickinson, North Dakota where he sold them for sex at a Rodeway Inn®.[69]

vi. In April 2016, a man was charged with trafficking a 17 year-old girl for the purpose of sex. He was arrested at a Rodeway Inn® in Clarksville, Tennessee.[70]

vii. In May 2016, a motel owner was arrested after running the Rodeway Inn® in Caseyville, Illinois like a brothel. Women and minors would come to the motel and there would be 10–20 women being prostituted for the motel owner's profit.[71]

---

[66] Michaelangelo Conte, *Jersey City man, New York prostitute indicted in murder of man at Atlantic City motel: officials*, NJ.com (Oct. 2, 2010), https://www.nj.com/hudson/2010/10/jersey_city_man_new_york_prost.html.

[67] *11 Eu Claire-area men arrested in prostitution bust*, WEAU.com (Apr. 15, 2013), available at https://www.weau.com/home/headlines/Several-men-arrested-in-prostitution-bust-203049221.html.

[68] https://www.watertowndailytimes.com/article/20131016/NEWS07/710169954 (last visited March 25, 2019).

[69] *Wyoming Man Faces Prostitution, Multiple Federal Charges after Arrest in Dickinson*, GRAND FORKS HERALD, (Jun, 4, 2015), https://www.grandforksherald.com/news/crime-and-courts/3759971-wyoming-man-faces-prostitution-multiple-federal- charges-after-arrest.

[70] https://www.theleafchronicle.com/story/news/2016/04/29/clarksville-man-charged-human-trafficking-case/8370 (last visited March 25, 2019).

[71] Ashlee Carlstrom, *Caseyville Motel Owner Accused of Sex Crimes*, KMOV4, (May. 16, 2016). https://www.kmov.com/news/caseyville-motel-owner-accused-of-sex-crimes/article_5a291fdd-467a-5094-9cbc-

viii. In July 2016, police discovered a sex trafficking ring happening at the Rodeway Inn® in Allentown, Pennsylvania. The man took the women's ID, room keys, car keys and cell phones while making them sell themselves for sex, and held them at the motel against their will.[72]

ix. In June 2017, officers arranged to meet a prostitute off of the website backpage.com charging $140 for "full service". When they arrived at the Rodeway Inn® in Wormleysburg, Pennsylvania, officers arrested a man smoking crack in the bathroom, a woman prostitute, and another man controlling the woman's sexual transactions.[73]

x. In July of 2017, investigators responded to a call at a Rodeway Inn® in Tyler, Texas where they found four females ranging from 17–36 years-old being held against their will for the purpose of selling sex. One of the victims initiated the call to police that resulted in two men getting arrested for sex trafficking.[74]

xi. In September 2017, the state of Delaware filed a lawsuit against the Rodeway Inn® in Newark, Delaware after it was declared a criminal nuisance property with over 900 police calls. The manager of the motel was recently charged for soliciting sex on property grounds.[75]

71d41fb9b61b.html.
[72] *Allentown Police Make Prostitution Bust at Rodeway Inn*, 69 NEWS WFMZ, (Sep. 28, 2016, 10:23 PM EDT), http://www.wfmz.com/news/lehigh-valley/allentown-police-make-prostitution-bust-at-rodeway-inn/99738281.
[73] Amuehlemann, *Three Arrested after Wormleysburg Prostitution Bust*, FOX 43, (Jun, 6, 2017, 10:54 AM EST), https://fox43.com/2017/06/06/three-arrested-after-wormleysburg-prostitution-bust/.
[74] Kris Kirst, *2 Arrested in Prostitution Ring, Tyler Police Searching for Additional* Suspect, CBS 19, (July, 19, 2017, 1:45 PM CDT), https://www.cbs19.tv/article/news/2-arrested-in-prostitution-ring-tyler-police-searching-for-additional- suspect/457899723.
[75] Josh Shannon, *Former Rodeway Inn Manager Patronized Prostitutes at the Motel, Court Documents Say*, NEWARK POST ONLINE, (Sept, 8, 2017), https://www.newarkpostonline.com/news/former-rodeway-inn-

xii. In December 2017, a man was arrested for sex trafficking after police responded to an online advertisement to have sex with a 16 year-old girl at the Rodeway Inn® in Orlando, Florida. When they arrived, the minor answered the door and had bruises on her face from being beaten earlier that day.[76]

xiii. In January 2018, a woman told police that her trafficker left her at the Rodeway Inn® in Billings, Montana while he went to pick up other girls to prostitute in North Dakota. She was able to call a friend with a cell phone her trafficker left behind, who then called the police.[77]

xiv. In May 2018, a man compelled multiple women to become prostitutes after bribing them with heroin at a Rodeway Inn® in Greenville, North Carolina. The man would beat the women, force them to sexually service clients, and demand that the women participate in orgies with the other prostitutes and himself.[78]

xv. In December 2018, a self-proclaims "Crips" gang-member kidnapped two minors from their group home and brought them to a Rodeway Inn® in Ronkonkoma, New York for the purpose of sex trafficking. The 12 year-old called her ex-foster mother, who then called the

---

manager-patronized-prostitutes-at-the- motel-court/article_dc7c7008-9447-11e7-9457-9bf5f0959c86.html.

[76] Michael Williams, *Orlando Man Trafficked, Beat Underage Girl, Authorities Say*, ORLANDO SENTINEL, (Dec. 18, 2017), https://www.orlandosentinel.com/news/crime/os-tyquarius-lebby-human-trafficking-20171218-story.html.

[77] *Day 8: Jury Returns Guilty Verdict in Human Trafficking Trial*, KURL 8 NBC, (Jan, 29, 2018), https://www.kulr8.com/news/day-jury-returns-guilty-verdict-in-human-trafficking-trial/article_44228282-6bfe-59cb-8dd4-.

[78] *Greenville Man Sentenced to Nine Years on Prostitution Charges*, REFLECTOR, (May 30, 2018), http://www.reflector.com/News/2018/05/30/Greenville-man-sentenced-to-9-years-on-human-trafficking-prostitution.html.

police.[79]

xvi. In February 2019, a man was arrested after sex trafficking a 16 year-old out of a Rodeway Inn® in East Windsor, Connecticut. The man used an online website where he charged $60 for oral sex, $80 for a "quick visit" of 15 minutes, $120 to $130 for 30 minutes, and $150 to $170 for an hour.[80]

xvii.   In February 2019, a man pointed a gun at women inside of a Rodeway Inn® in Pasco, Washington and forced them to turn tricks for him. The women were required to service 6–10 men a day, charging a minimum of $200 each john.[81]

xviii.   Additionally, Defendant Choice has been aware of sex trafficking on Rodeway Inn brand properties through publicly available websites such as www.tripadvisor.com and www.yelp.com. Online reviews show the pervasiveness of customer reported sex trafficking on Rodeway Inn brand properties and Defendant Wyndham's inattentiveness, for example:

  • In May of 2009, a reviewer described a stay at the Rodeway Inn in Atlantic City, New Jersey as follows: "'There are two prostitutes selling sex to three drug dealers…' [The

[79] *Police: 2 Central Islip Men Tried to Turn 12-Year-Old Girl Into Prostitute*, NEWS 12 LONG ISLAND, (Dec, 20, 2018, 5:23 PM), http://longisland.news12.com/story/39673810/police-2-men-charged-in-suffolk-sex-trafficking-case-involving-a-child.

[80] David Owens, *East Hartford Man Pleads Guilty to Sex Trafficking of 16-Year-Old-Girl*, HARTFORD COURANT, (Feb, 11, 2019), https://www.courant.com/news/connecticut/hc-east-hartford-man-sex-trafficking-0212-20190211- pp34b2inc5ehjasg2uuttxiqwa-story.html.

[81] Kristen M. Kraemer, *Drugs and Threats to Prostitute Women in Tri-Cities, Prosecutors Say*, TRI-CITY HERALD, (Feb. 24, 2019, 2:11 PM PDT) https://www.tri-cityherald.com/news/local/crime/article226472270.html.

COMPLAINT                                      53

front desk employee] then picks up the phone AND CALLS THE ROOM. 'I want you all out of here, get out of the room, you cannot stay here anymore.' … I never got the refund, despite a BBB follow up, letters to Rodeway Inn, and pointless phone calls to their General Manager. Needless to say, I won't be staying there EVER again."[82]

- In August of 2011, a reviewer described a Rodeway Inn in Bristol, Pennsylvania as follows: This is a drug/high crime area frequented by crackheads and prostitutes."[83]

l. Defendant ESA owns, supervises, or operates the Extended Stay America® located at 11506 NE 3rd Street (Formerly 300 NE 115th Avenue prior to December 20, 2010) Vancouver, Washington 98684. ESA failed to implement and enforce any of its own policy or policies and protect Plaintiff A.B. from being sex trafficked.

m. Defendant ESA had actual knowledge of sex trafficking occurring on its branded hotel properties because ESA and Extended Stay America knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. ESA and Extended Stay America allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for

---

[82] Review of Rodeway Inn Boardwalk, Atlantic City, New Jersey (May 19, 2009), available at https://www.yelp.com/biz/rodeway-inn-boardwalk-atlantic-city.
[83] Review of Rodeway Inn, Bristol, Pennsylvania (Aug. 18, 2011), available at https://www.tripadvisor.com/ShowUserReviews-g52258-d216916-r116911196-Rodeway_Inn-Bristol_Pennsylvania.html.

sex at the Extended Stay America. ESA and Extended Stay America facilitated the trafficking through its practices, policies, and procedures. ESA and Extended Stay America failed to take appropriate action to prevent the trafficking of individuals for sex so that ESA and Extended Stay America could continue to profit from the business that trafficking brings, including business from out-of-state.

n.   Defendant ESA had constructive knowledge of sex trafficking occurring on its branded hotel properties because ESA and Extended Stay America knew or should have known that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. ESA and Extended Stay America allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Extended Stay America. ESA and Extended Stay America facilitated the trafficking through its practices, policies, and procedures. ESA and Extended Stay America failed to take appropriate action to prevent the trafficking of individuals for sex so that ESA and Extended Stay America could continue to profit from the business that trafficking brings, including business from out-of-state.

o.   ESA knew or should have known that the Extended Stay America® hotel where Plaintiff A.B. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked.

COMPLAINT                    55

p.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant ESA has repeatedly failed to stop these actions.

q.   Defendant ESA exercised control over Extended Stay America® hotels by:

    i.   distributing information to assist employees in identifying human trafficking;

    ii.   providing a process for escalating human trafficking concerns within the organization;

    iii.   requiring employees to attend training related to human trafficking;

    iv.   providing new hire orientation on human rights and corporate responsibility;

    v.   providing training and education to Extended Stay America® branded hotels through webinars, seminars, conferences, and online portals;

    vi.   developing and holding ongoing training sessions on human trafficking; or

    vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

r.   ESA was in an agency relationship with Extended Stay America® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant ESA's exercise of an ongoing and systemic right of control over Extended Stay America® hotels by Defendant ESA's operations, including the means and methods of how Extended Stay America®

branded hotels conducted daily business through one or more of the following actions:

 i. hosting online bookings on Defendant ESA's domain;

 ii. requiring Extended Stay America® branded hotels to use Defendant ESA's customer rewards program;

 iii. setting employee wages;

 iv. making employment decisions;

 v. advertising for employment;

 vi. sharing profits;

 vii. standardized training methods for employees;

 viii. building and maintaining the facility in a manner specified by the owner;

 ix. standardized or strict rules of operation;

 x. regular inspection of the facility and operation by owner;

 xi. fixing prices; or

 xii. other actions that deprive Extended Stay America® branded hotels of independence in business operations.

s. An apparent agency also exists between Defendant ESA and Extended Stay America® hotels. Defendant ESA held out Extended Stay America® branded hotels to the public as possessing authority to act on its behalf.

t. Given Defendant ESA's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Extended Stay America® branded hotels, Defendant ESA breached its duties in the following ways:

    i.  did not adequately distribute information to assist employees in identifying human trafficking;

    ii.  failed to provide a process for escalating human trafficking concerns within the organization;

    iii.  failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.  failed to provide new hire orientation on human rights and corporate responsibility;

    v.  failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.  failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.  failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

u.  For years, Defendant ESA has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs on its Extended Stay America® branded properties throughout the country. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of Plaintiff A.B. at Extended Stay America® hotels that forms the basis of this complaint.

    i.  In August 2010, there was a rise in prostitution arrests at the Extended Stay America Hotel as a result of concentrated enforcement operations

COMPLAINT                  58

at local hotels that targeted narcotics, gangs, and prostitution activity. The Extended Stay America was known to be used often by prostitutes due to its close proximity to the Bob Hope Airport.[84]

ii. In April 2012, a 32-year old Los Angeles man was arrested on suspicion of trying to force a 16-year-old girl into prostitution out of an Extended Stay America hotel room in Santa Rosa.[85]

iii. In June 2012, two prostitutes were arrested at an Extended Stay America and both women had condoms and lubricant in their possession.[86]

iv. In October 2014, a man was arrested at the Extended Stay America and faced three counts of human trafficking and several other charges for bringing three women to a hotel to work as prostitutes.[87]

v. In July 2015, the body of a prostitute was found in the Extended Stay America hotel in Burlington, Massachusetts allegedly by two men who were making a night of robbing prostitutes that they had found on backpage.com ads.[88]

vi. In January and February 2019, a former prostitute stated in her interview that she solicited her customers online and chose the

---

[84] *Prostitution arrests signal trend*, LA TIMES (Aug. 18, 2010), https://www.latimes.com/socal/burbank-leader/news/tn-blr-prostitutes-20100818-story.html.

[85] *Santa Rosa: Man Arrested in Child Prostitution Case*, THE PRESS DEMOCRAT (April 5, 2012), https://www.pressdemocrat.com/news/2612544-181/santa-rosa-man-arrested-in?sba=AAS.

[86]

[87] *Morrisville police charge man brought women to hotel as prostitutes*, THE NEWS & OBSERVER (Oct. 3, 2014), https://www.newsobserver.com/news/local/crime/article10082090.html.

[88] *Internet has driven sex industry deep into shadows*, BOSTON GLOBE (July 15, 2015), https://www.bostonglobe.com/metro/2015/07/15/for-prostitutes-terrible-life-made-worse/7tvir4sJNvIyMKQB7PGYoO/story.html.

COMPLAINT                                    59

Extended Stay America specifically because it was "safer."[89]

vii. In January and May 2019, several men were arrested for prostitution at the Extended Stay America in Norton, Massachusetts.[90]

viii. Additionally, Defendant ESA has been aware of sex trafficking on Extended Stay America brand properties through publicly available websites such as www.tripadvisor.com. Online reviews show the pervasiveness of customer reported sex trafficking on Extended Stay America brand properties and Defendant ESA's inattentiveness, for example:

- In March of 2013, a reviewer titled a review of an Extended Stay America in Portland, Oregon, as "Prostitute in next room," and further explained: "There was loud partying in the room next to us until midnight. Then a series of men had loud sex with a woman. The door would slam, then there would be some laughing and talking between a man and a woman. Then the bed would bang, the men would groan, then some quiet talking. The door would slam and the shower would run. This sequence of events repeated over and over again until 5:00 a.m."[91]

---

[89] *Parents, kids concerned about prostitutes in neighborhoods*, NEWS4JAX (Feb. 27, 2019), https://www.news4jax.com/news/investigations/parents-kids-concerned-about-prostitutes-in-neighborhoods.

[90] *See Five arrested in prostitution sting in Norton*, THE SUN CHRONICLE (May 11, 2019), https://www.thesunchronicle.com/news/local_news/five-arrested-in-prostitution-sting-in-norton/article_8790422d-b205-5e4e-9068-8a31647b0671.html; *Three men arrested in prostitution sting at Norton hotel*, The Sun Chronicle (Jan. 13, 2019), https://www.thesunchronicle.com/news/local_news/three-men-arrested-in-prostitution-sting-at-norton-hotel/article_a79df30c-a487-5d06-a8e6-fe2b1e27276b.html.

[91] Review of Extended Stay America – Portland – Beaverton – Eider Court, Portland, OR (Mar. 13, 2013), available

COMPLAINT                                                      60

71.    RED LION HOTELS CORPORATION  ("RLHC"):

a.   Defendant RLHC owns, supervises, or operates the Red Lion Inn® located at 3301 Market Street NE Salem, Oregon 97301. RLHC failed to implement and enforce any of its own policy or policies and protect Plaintiff A.B. from being sex trafficked.

b.   Defendant RLHC had actual knowledge of sex trafficking occurring on its branded hotel properties because RLHC and Red Lion Inn knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship involves the use of force, fraud, and coercion. RLHC and Red Lion Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Red Lion Inn. RLHC and Red Lion Inn facilitated the trafficking through its practices, policies, and procedures. RLHC and Red Lion Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that RLHC and Red Lion Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

c.   Defendant RLHC had constructive knowledge of sex trafficking occurring on its branded hotel properties because RLHC and Red Lion Inn knew or should have known that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that the pimp-sex trafficking victim/prostitute relationship

at https://www.tripadvisor.com/ShowUserReviews-g51765-d106928-r154442742-Extended_Stay_America_Portland_Beaverton_Eider_Court-Beaverton_Oregon.html.

involves the use of force, fraud, and coercion. RLHC and Red Lion Inn allowed, authorized, permitted, induced, or encouraged the trafficking of individuals for sex at the Red Lion Inn. RLHC and Red Lion Inn facilitated the trafficking through its practices, policies, and procedures. RLHC and Red Lion Inn failed to take appropriate action to prevent the trafficking of individuals for sex so that RLHC and Red Lion Inn could continue to profit from the business that trafficking brings, including business from out-of-state.

d. RLHC knew or should have known that the Red Lion Inn® hotel where Plaintiff A.B. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked.

e. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant RLHC has repeatedly failed to stop these actions.

f. Defendant RLHC exercised control over Red Lion Inn® hotels by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v. providing training and education to Residence Inn® branded hotels

through webinars, seminars, conferences, and online portals;

vi.  developing and holding ongoing training sessions on human trafficking; or

vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  RLHC was in an agency relationship with Red Lion Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant RLHC's exercise of an ongoing and systemic right of control over Red Lion Inn® hotels by Defendant RLHC's operations, including the means and methods of how Red Lion Inn® branded hotels conducted daily business through one or more of the following actions:

i.  hosting online bookings on Defendant RLHC's domain;

ii.  requiring Residence Inn® branded hotels to use Defendant RLHC's customer rewards program;

iii.  setting employee wages;

iv.  making employment decisions;

v.  advertising for employment;

vi.  sharing profits;

vii.  standardized training methods for employees;

viii.  building and maintaining the facility in a manner specified by the owner;

ix.  standardized or strict rules of operation;

x.  regular inspection of the facility and operation by owner;

xi.   fixing prices; or

xii.  other actions that deprive Red Lion Inn® branded hotels of independence in business operations.

h.  An apparent agency also exists between Defendant RLHC and Red Lion Inn® hotels. Defendant RLHC held out Red Lion Inn® branded hotels to the public as possessing authority to act on its behalf.

i.  Given Defendant RLHC's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Red Lion Inn® branded hotels, Defendant RLHC breached its duties in the following ways:

i.   did not adequately distribute information to assist employees in identifying human trafficking;

ii.  failed to provide a process for escalating human trafficking concerns within the organization;

iii. failed to mandate managers, employees, or owners attend training related to human trafficking;

iv.  failed to provide new hire orientation on human rights and corporate responsibility;

v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi.  failed to develop and hold or require ongoing training sessions on human trafficking; or

vii. failed to provide checklists, escalation protocols and information to

COMPLAINT                                    64

property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  For years, Defendant RLHC has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs on its Red Lion Inn® branded properties throughout the country. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of Plaintiff A.B. at Red Lion Inn® hotels that forms the basis of this complaint.

  i.  In August 2008, a woman was arrested for operating a prostitution ring within several hotels, including the Red Lion, and employing a 16-year old.[92]

  ii.  In April 2010, a 20-year-old man and two teens were charged with forcing an 18-year old girl to sell sex out of the Red Lion Inn.[93]

  iii.  In September 2011, a 31-year-old man was arrested for compelling prostitution after setting up a prostitution date for a juvenile girl at the Red Lion Hotel near the airport.[94]

  iv.  In November 2013, a woman was arrested and charged with prostitution for soliciting sex at a Red Lion Hotel in Elko. Hotel staff told police they observed the woman "making her way throughout the casino speaking with several patrons within the casino as if she was

---

[92] Tom McGhee, *Madam employed 16-year-old, used hotels, court papers say*, DENVER POST (Aug. 11, 2008), https://www.denverpost.com/2008/08/11/madam-employed-16-year-old-used-hotels-court-papers-say/.

[93] *Three charged with forcing teen to prostitute at Bellevue hotels*, SEATTLE PI (April 26, 2010), https://www.seattlepi.com/local/article/Three-charged-with-forcing-teen-to-prostitute-at-882161.php.

[94] *Undercover police sting nabs a pimp prostituting a juvenile girl at Red Lion Hotel, police say*, OREGONLIVE (Sept. 15, 2011), https://www.oregonlive.com/portland/2011/09/undercover_police_sting_nabs_a.html.

COMPLAINT                                    65

propositioning people."[95]

v. In April 2018, a man was arrested at the Red Lion Hotel for assaulting, robbing, and holding prostitutes against their will in a hotel room.[96]

vi. In August 2019, a man was arrested on federal sex trafficking charges at the Red Lion Hotel after officers monitoring online prostitution responded to a prostitution ad online.[97]

vii. Additionally, Defendant RLHC has been aware of sex trafficking on Red Lion brand properties through publicly available websites such as www.tripadvisor.com. Online reviews show the pervasiveness of customer reported sex trafficking on Red Lion brand properties and Defendant RLHC's inattentiveness, for example:

- In March of 2013, a reviewer titled a review of a Red Lion Inn in Victoria, British Columbia, as "Should be called the Hooker Hotel," and further explained: "If you like stained furniture in your room, hookers standing out front, a liquor store onsite and the sounds of loud parties with hookers all night then this is the place for you."[98]

---

[95] Caley Cook, *Sex Solicitor sentenced to community service*, ELKO DAILY (Nov. 13, 2013), https://elkodaily.com/news/sex-solicitor-sentenced-to-community-service/article_4ffd640c-4cd4-11e3-851c-001a4bcf887a.html.

[96] *Frantic prostitute alerts Wenatchee police about her attacker; two arrested*, iFIBERONE (Apr. 6, 2018), http://www.ifiberone.com/columbia_basin/frantic-prostitute-alerts-wenatchee-police-about-her-attacker-two-arrested/article_da4591ac-39f6-11e8-9300-e7734bfabe6c.html.

[97] *Man arrested on federal sex trafficking charges*, WYOMING TRIBUNE EAGLE (Aug. 8, 2019), https://www.wyomingnews.com/news/local_news/man-arrested-on-federal-sex-trafficking-charges/article_310a0fce-3cc3-59d7-899f-923558845803.html.

[98] Review of Red Lion Inn & Suites Victoria, Victoria, British Columbia (Apr. 28, 2013), available at https://www.tripadvisor.com/ShowUserReviews-g154945-d182597-r159076862-Red_Lion_Inn_Suites_Victoria-Victoria_Victoria_Capital_Regional_District_Vancouve.html.

COMPLAINT                                                    66

## C.    THE SEX TRAFFICKING OF A.B.

72.    A.B. was trafficked through Oregon and Washington beginning in September 2012 through March 2013. A.B. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, and false imprisonment at the Defendants' hotels from September 2012 to March 2013.

73.    A.B. was required to have sex for payment with various buyers at the Defendants' hotels in response to advertisements for commercial sex that her trafficker posted on websites such as www.backpage.com.[99]

74.    A.B. was sold by her trafficker for sex to at least 7 "clients" per night.

75.    During times she was with a "john", her trafficker used hotel Wi-Fi to post advertisements, talk to "johns", and watch and record her sexual acts.

76.    From approximately September 2012 through March 2013, the Plaintiff was repeatedly trafficked for sex at the DoubleTree, Days Inn, Residence Inn, Rodeway Inn, Extended Stay America, and Red Lion hotels.

77.    Each buyer entering Defendant Hotels' properties was a non-paying guest and left shortly after he arrived. Her trafficker would wait in the lobby or in the car while A.B. was sex trafficked on Defendant Hotels' properties. The foot traffic to the rooms was constant and voluminous. When the hotel doors were locked, A.B. would walk out of her room in a tank top and "booty shorts" to open the front lobby door for unregistered men late at night.

78.    A.B.'s trafficker always booked the rooms directly from the front desk or online. He paid for each room using his debit card or cash and often booked rooms using an employee

---

[99] Backpage.com was the leading online marketplace for commercial sex, until it was seized by the federal authorities in April 2018. Backpage.com operated in 97 countries and 943 locations worldwide—and was last valued at more than a half-billion dollars. See STAFF OF PERMANENT SUBCOMMITTEE ON INVESTIGATIONS; 118TH CONG., REP. ON BACKPAGE.COM'S KNOWING FACILITATION OF ONLINE SEX TRAFFICKING (Comm. Print 2017).

discount code. After booking the room, her trafficker would get two keys and take one key to A.B., who would be waiting in the car. Each time, A.B. would walk to the room by herself, never making eye contact and not having registered as a guest.

79.   Abundant used condoms were scattered across various surfaces and visible to any hotel employee who entered the room.

80.   A.B. was required to avoid eye contact with hotel staff and did not speak to anyone. Despite numerous surveillance cameras throughout the hotel properties, no help or attention was given to A.B. by any hotel staff.

81.   The Plaintiff encountered the same hotel staff over the course of the time she was trafficked for sex at the Defendant hotel properties. Hotel staff ignored A.B. and did nothing to prevent the ongoing torture she endured while she was regularly trafficked for sex at Defendants' hotel properties.

82.   Despite obvious signs of human trafficking (no eye contact and duration of stay) and indicators of commercial sex activity (bottles of lubricants, boxes of condoms, used condoms in the trash, excessive requests for towels and linens, room rentals by her pimp with cash or credit while A.B. actually entered the room). Defendant Hotels failed to recognize or report Plaintiff A.B.'s trafficking. Through room rentals to her trafficker, the Defendants harbored or otherwise facilitated a sex trafficking venture on their hotel properties and accordingly, financially benefited from the sex trafficking the Plaintiff suffered. Furthermore, the Defendants failed to prevent her continued victimization.

83.   Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive knowledge of drug dealing, prostitution, and/or general safety

concerns at their hotels, including, but not limited to, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

84.    Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of A.B.

85.    The impact of being choked and sex trafficked at the Defendants' hotel properties has forever emotionally and physically injured A.B. who, despite the many years since her escape suffers immensely as a result of the horrors inflicted upon her at the Defendants' hotel properties.

## D. THE DEFENDANTS FACILITATED THE TRAFFICKING OF A.B.

86.    Hilton, Wyndham, Marriott, Choice Hotels, ESA, and RLHC ("Defendant Hotels") profited from the sex trafficking of A.B. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to A.B.'s trafficker, when they knew, or should have known, that he was using their room to imprison A.B. and subject her to repeated exploitation as he forced her into sexual servitude.

87.    Defendant Hotels knew, or should have known, that A.B. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because A.B.'s trafficker frequented the Defendants' hotels.

88.    Defendant Hotels knew, or should have known, that A.B. was being trafficked because A.B. was arrested on property grounds, constantly entertained traffic to appease her traffickers' daily quotas, and her traffickers would help check her in then not proceed to

the room; behavior that indicated they were using the Defendants' hotels for his illegal sex trafficking venture.

89.    Defendant Hotels actively participated in this illegal endeavor by knowingly or negligently providing lodging to A.B.'s trafficker in which to harbor A.B. while he was trafficking her.

90.    Defendant Hotels profited from the sex trafficking of A.B. and knowingly or negligently aided and participated with A.B.'s trafficker in his criminal venture. The Defendants took no action as A.B. repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment.

91.    Defendant Hotels actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from A.B. in which to harbor A.B. while she was being trafficked.

92.    The Defendant Hotels all had the opportunity to stop A.B.'s trafficker and offenders like him from victimizing A.B. and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

93.    The Defendant Hotels all financially benefited from the sex trafficking of A.B., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

94.    Defendant Hotels enjoy the steady stream of income that sex traffickers bring to their hotel brands, such as the DoubleTree, Days Inn, Residence Inn, Extended Stay America, and Red Lion Inn.

95.    Defendant Hotels financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

96.    Defendant Hotels failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

97.    Defendant Hotels maintained their deficiencies to maximize profits by:

    a.  Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

    b.  Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

    c.  Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation;

98.    As a direct and proximate result of these egregious practices on the part of the Defendant Hotels, A.B. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### A. COUNT ONE – 18 U.S.C §1595 ("TVPRA")

99.    The Plaintiff A.B. incorporates each foregoing allegation.

100.   A.B. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

101.   The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had

a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a). At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of A.B. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

102.  The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade. Moreover, the Defendants directly benefitted from the trafficking of A.B. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of A.B.'s injuries and damages.

103. A.B. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591(a).

## **PRAYER FOR RELIEF**

WHEREFORE the Plaintiff requests that the jury selected to hear this case render a verdict in her favor on all counts alleged, and against each and every named Defendant, separately and severally, and that it award damages to her in an amount which will adequately compensate her for the injuries and damages she sustained due to the Defendants' conduct outlined as follows:

    a.  All available compensatory damages for the described losses with respect to each cause of action;

COMPLAINT                                    72

b.   past and future medical expenses, as well as the costs associated with past and future life care;

c.   past and future lost wages and loss of earning capacity;

d.    past and future emotional distress;

e.   consequential and/or special damages;

f.   all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.   disgorgement of profits obtained through unjust enrichment;

h.   restitution;

i.   punitive damages with respect to each cause of action;

j.   reasonable and recoverable attorneys' fees;

k.   costs of this action; and

l.   pre-judgment and all other interest recoverable.

Also, on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that it award damages to the Plaintiff in an amount which adequately reflects the enormity of the Defendants' wrongs, and which will effectively prevent other similarly caused acts. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

## THE PLAINTIFF DEMANDS A TRIAL BY JURY

COMPLAINT                              73

Dated:  December 9, 2019                    **RESPECTFULLY SUBMITTED,**

                                        /s/ Joel Shapiro
                                        Joel Shapiro, OSB #003814
                                        Law Office of Joel Shapiro, LLC
                                        1312 SW 16th Ave, 2nd Floor
                                        Portland, Oregon 97201
                                        T: (503) 224-5950
                                        E: joel@joelshapirolaw.com

                                        /s/ Kimberly Lambert Adams
                                        Kimberly Lambert Adams (*pro hac vice* admission forthcoming)
                                        FL Bar No. 0014479
                                        Levin, Papantonio, Thomas,
                                        Mitchell, Rafferty & Proctor, P.A.
                                        316 S. Baylen St. Suite 600
                                        Pensacola, FL 32502
                                        T: 850.435.7056
                                        F: 850.436.6056
                                        E: kadams@levinlaw.com

                                        *Trial Attorneys for Plaintiff*

COMPLAINT                           74