IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**A.B.**, an individual,

        Plaintiff,

    v.

**HILTON WORLDWIDE HOLDINGS INC.; WYNDHAM HOTELS & RESORTS, INC.; MARRIOTT INTERNATIONAL, INC.; CHOICE HOTELS INTERNATIONAL, INC.; EXTENDED STAY AMERICA, INC.; and RED LION HOTELS CORPORATION**,

        Defendants.

Case No. 3:19-cv-01992-IM

**OPINION AND ORDER**

**IMMERGUT, District Judge.**

Plaintiff A.B. brings this action against six hotel chains: Defendants Hilton Worldwide Holdings Inc.[1] ("Hilton"), Wyndham Hotels & Resorts, Inc. ("Wyndham"), Marriott International, Inc. ("Marriott"), Choice Hotels International, Inc.[2] ("Choice"), Extended Stay America, Inc. ("ESA"), and Red Lion Hotels Corporation ("Red Lion"). Plaintiff's claim against

---

[1] Hilton was improperly identified in Plaintiff's complaint as "Hilton Worldwide Holdings, Inc." ECF 15 at 9 n.1. The proper name is Hilton Worldwide Holdings Inc. *Id.* at 9.

[2] The Choice entity identified by Plaintiff, "Choice Hotels Corporation," is an improper party. The correct entity to be named is "Choice Hotels International, Inc." The parties agreed that this designation was a typo and will use the correct designation in future pleadings. ECF 37 at 6 n.1.

Defendants alleges that they each violated the Trafficking Victims Protection Reauthorization Act ("TVPRA") by profiting from her sex trafficking.

Before the Court are the following motions: (1) Defendant Choice's and Defendant ESA's Motions to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure (ECF 37, 72); (2) Defendants Marriott, Hilton, Wyndham, Red Lion, Choice, and ESA's Motions to Dismiss for Failure to State a Claim under Rule 12(b)(6) (ECF 14, 15, 17, 27, 37, 74); (3) Defendant Hilton's Motion to Dismiss Hilton as an improper party under Rule 21 (ECF 15); and in the alternative, (5) Defendant Choice's and Defendant Red Lion's Motions to Strike under Rule 12(f) (ECF 27, 37). On August 14, 2020, this Court heard oral argument on all motions.

For the reasons set forth below, this Court grants Defendant Choice's and Defendant ESA's Motions to Dismiss for Lack of Personal Jurisdiction. This Court further grants the Motions to Dismiss for Failure to State a Claim filed by Defendants Hilton, Marriott, Wyndham, and Red Lion with leave to amend. Defendant Hilton's Motion to Dismiss Hilton as an improper party under Rule 21 is denied. Finally, Defendant Choice and Defendant Red Lion's Motions to Strike are denied as moot.

## BACKGROUND

Plaintiff was 22 years old when she was first trafficked through Oregon and Washington. ECF 1 at ¶ 9(a). Beginning in September 2012 through March 2013, Plaintiff alleges she was sold by her trafficker for sex at six different hotels, including the DoubleTree® in Portland, Oregon, a Hilton branded property ("DoubleTree Portland"), the Days Inn® in Vancouver, Washington, a Wyndham branded property ("Days Inn Vancouver"), the Residence Inn® located near Portland International Airport in Oregon, a Marriott branded property ("Residence Inn Portland Airport"), the Rodeway Inn® in Vancouver, Washington, a Choice branded property

PAGE 2 – OPINION AND ORDER

("Rodeway Inn Vancouver"), the Extended Stay America® in Vancouver, Washington, an ESA branded property ("Extended Stay America Vancouver"), and the Red Lion Inn® in Salem, Oregon, a Red Lion branded property ("Red Lion Salem") (collectively, "Defendants' hotels"). *Id.* at ¶¶ 10(i), 67(a) (Hilton); 11(j), 68(e) (Wyndham); 12(j), 69(a) (Marriott); 13(j), 70(a) (Choice); 14(j), 70(l) (ESA); 15(j), 71(a) (Red Lion); 74, 76.

Plaintiff alleges that during the seven-month period during which she was trafficked, there were "apparent red flags" of Plaintiff being sex trafficked at Defendants' hotels. *Id.* at ¶ 84. These signs of sex trafficking included Plaintiff repeatedly staying at the hotel without any luggage, always avoiding eye contact or interactions with the staff, and showing physical signs of malnourishment. *Id.* at ¶ 80, 90. In addition, Plaintiff's room exhibited signs of commercial sex work: abundant used condoms throughout the room and in the trash, bottles of lubricants, boxes of condoms, and numerous requests for towels and linens. *Id.* at ¶¶ 77, 79, 82. Plaintiff avers that male guests frequently visited her room and left shortly after arrival. *Id.* at ¶ 77. Late at night, Plaintiff would wear a tank top and "booty shorts" to open the front lobby door for unregistered male guests. *Id.*

Plaintiff alleges that her trafficker always booked the rooms directly from the front desk or online. *Id.* at ¶ 78. He paid for each room using his debit card or cash and often booked rooms using an employee discount code. *Id.* After booking the room, her trafficker would get two keys and take one key to Plaintiff, who would be waiting in the car. *Id.* Plaintiff's trafficker used hotel WiFi to post advertisements, talk to "johns", and watch and record Plaintiff's sexual acts. *Id.* at ¶ 75.

After waiting in the car while her trafficker checked in, Plaintiff would walk to the hotel room by herself, never making eye contact or speaking to anyone. *Id.* at ¶¶ 78, 80. Plaintiff

alleges she encountered the same hotel staff over the course of the time she was trafficked for sex at Defendants' hotels and that the hotel staff paid no attention to her. *Id.* at ¶¶ 80, 81. Plaintiff was arrested on Defendants' hotels' property grounds. *Id.* at ¶ 88.

Plaintiff brings a single claim under the TVPRA against each Defendant. *Id.* at ¶¶ 2, 8. As to all Defendants, Plaintiff also alleges that each "owns, supervises and/or operates" one of the branded hotels where she was trafficked, and each benefitted financially from room rental and other incidentals recognized by renting rooms in which she was trafficked. *Id.* at ¶¶ 10(h), 10(i), 11(i), 11(j), 12(i), 12(j), 13(i), 13(j), 14(i), 14(j), 15(i), 15(j). Plaintiff alleges that each Defendant had constructive knowledge of sex trafficking occurring on its branded properties. *Id.* at ¶¶ 67(c), 68(g), 69(c), 70(d), 70(n), 71(c). According to Plaintiff, each Defendant knew or should have known that their branded hotel where Plaintiff was trafficked was in an area "known for high incidences of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked." *Id.* at ¶¶ 67(d), 68(h), 69(d), 70(e), 70(o), 71(d). Each Defendant allegedly failed to implement policies to protect Plaintiff from being trafficked and continues to profit from the business sex trafficking brings. *Id.* at ¶¶ 67(b), 68(g), 69(c), 70(b)–(c), 70(m), 71(a)–(b). Plaintiff also cites news reports and online reviews to allege that each Defendant had actual or constructive knowledge of sex trafficking occurring at their branded hotels throughout the country and asserts that each Defendant's knowledge facilitated the sex trafficking of Plaintiff. *Id.* at ¶¶ 67(j), 68(n), 69(j), 70(k), 70(u), 71(j). As to the relationship between each Defendant and their branded hotels, Plaintiff contends that they were each in an agency relationship through Defendants' "exercise of an ongoing and systematic right of control over [their branded hotels]" including how their branded hotels conducted daily business. *Id.* at ¶¶ 67(g), 68(k), 69(g), 70(h), 70(r), 71(g). Plaintiff also alleges that each

Defendant "held out [their] branded hotels to the public as possessing authority to act on its behalf." *Id.* at ¶¶ 67(h), 68(l), 69(h), 70(i), 70(s), 71(h).

As to Defendant Hilton, Plaintiff specifically added an allegation that she was repeatedly sold at the DoubleTree Portland by a pimp. *Id.* at ¶ 67(j)(vii). Plaintiff further alleges that in 2011, Defendant Hilton made a commitment to provide training and education on human trafficking prevention at its branded hotels, including DoubleTree® branded hotels. *Id.* at 29 n.44, ¶ 67(i). Plaintiff contends that Hilton knew that human trafficking was occurring at DoubleTree® branded hotels yet failed to follow through with its commitment to take action to prevent sex trafficking. *Id.* at ¶¶ 67(b), 67(i).

As a specific allegation against Wyndham, Plaintiff asserts that in 2011, Wyndham's predecessor entity Wyndham Worldwide Corporation, signed the End Child Prostitution and Trafficking's ("ECPAT-USA") Tourism Child-Protection Code of Conduct (the "Code") which identifies six steps companies can take to prevent child sex trafficking. *Id.* at ¶¶ 40–41, 68(c). Plaintiff alleges Wyndham did not follow the Code. *Id.* at ¶ 68(c). Plaintiff also alleges that Wyndham trained only some of its employees to look for signs of trafficking. *Id.* at ¶ 53.

Likewise for Defendant Choice, Plaintiff specifically alleges that Choice claims it has supported the anti-trafficking group Polaris since 2010 and is in a partnership with ECPAT which developed a training module in 2010 for hotel management and staff. *Id.* at ¶ 55. Plaintiff contends that Choice failed to implement and enforce any of these policies to protect Plaintiff from being sex trafficked. *Id.* at ¶¶ 70(b), 70(j).

Other than citing to news reports and online reviews containing their branded names, Plaintiff makes no specific allegations as to Defendants Marriott, ESA, and Red Lion.

**MOTIONS TO DISMISS**

**A.    Defendant Choice's and Defendant ESA's Motions to Dismiss for Lack of Personal Jurisdiction**

**1.    General Jurisdiction**

A court may assert general personal jurisdiction over a foreign corporation if the corporation's activities in the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Courts consider factors such as "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). The paradigm forums in which a corporation is deemed at home are the corporation's place of incorporation and the principal place of business. *Goodyear*, 564 U.S. at 924. In an "exceptional case," a corporation's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Courts have recognized, however, that establishing general jurisdiction through the "exceptional case" doctrine, i.e. in a forum other than the place of incorporation or the principal place of business, is "incredibly difficult." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (internal quotation marks omitted). Additionally,

the general jurisdiction analysis "calls for an appraisal of the corporation's activities in their entirety, both nationwide and worldwide. *Daimler*, 571 U.S. at 139 n.20. A corporation "that operates in many places can scarcely be deemed at home in all of them." *Id.* For example, in *Tyrrell* the Supreme Court considered whether a railroad company was subject to general jurisdiction in Montana, where the company had over 2,000 miles of railroad track, employed over 2,100 individuals, and maintained an automotive facility. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1554 (2017). Rather than simply examining the extent of the in-state operations, the Court analyzed the company's activities in their entirety. In so doing, the Supreme Court found that the railroad's in-state contacts represented a small percentage of the company's overall business—the tracks amounted to 6% of the company's total track mileage, the employees represented less than 5% of the company's work force, and the Montana operations generated less than 10% of the company's total revenue. *Id.* Although the company's in-state contacts were significant, the Supreme Court concluded the railroad company was not so "heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State." *Id.* (quoting *Daimler*, 571 U.S. at 761).

Choice is neither incorporated under Oregon law, nor does it have its principal place of business in Oregon. ECF 68 at 4. Choice therefore may only be found subject to general jurisdiction in Oregon under the exceptional case doctrine. Plaintiff argues general jurisdiction is proper because Choice supervises over 300 properties in Oregon, solicits business in the state through its website, and has designated an agent for service of process within the state. ECF 51 at 27. Plaintiff also notes that Choice has staff and real property in Oregon. *Id.* Although Choice operates numerous properties in this forum, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Daimler*, 571 U.S. 117, 139 n.20

(internal quotation marks and alterations omitted). The Oregon properties represent less than 5 percent of Choice's worldwide properties. *See* ECF 51-5 at 2 (stating Choice owns 7,045 properties worldwide). Similar to the railroad company in *Tyrrell*, Choice's in-state activities represent only a small percentage of the company's overall business. These activities fail to satisfy the exacting standard for concluding Choice is "essentially at home" in Oregon.

## 2. Specific Jurisdiction

Plaintiff next asserts that specific jurisdiction is proper over both Defendants Choice and ESA. The Ninth Circuit applies a three-part test to determine whether specific jurisdiction exists over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs of the test. Id. If the plaintiff establishes both prongs, the defendant must provide a compelling reason that the exercise of jurisdiction is unreasonable. Id. If, however, the plaintiff fails to establish either of the first two prongs, personal jurisdiction is not established in the forum state. Id.

Under the first prong, Plaintiff must show that Defendants purposefully directed their activities toward Oregon or purposefully availed themselves of the privilege of conducting activities in Oregon. *Id.* Although courts sometimes use these terms interchangeably, they are distinct concepts. Courts most often use a purposeful direction analysis for suits sounding in tort,

PAGE 8 – OPINION AND ORDER

while a purposeful availment analysis is applied for suits sounding in contract. *Id.* Because

Plaintiff's TVPRA claims arise in tort, this Court applies the purposeful direction analysis.

The Ninth Circuit evaluates purposeful direction cases under the "effects" test, which

"requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed

at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Plaintiff does not directly

address the elements of this test, but generally argues that Choice and ESA purposefully directed

activity into the state of Oregon by erecting the Choice and ESA branded hotels within the state.

ECF 51 at 30; ECF 82 at 9. This Court need not address whether this conduct satisfies the first

prong of the specific jurisdiction analysis, however, because Plaintiff has not met her burden on

the second prong of the analysis.

Plaintiff has failed to establish her TVPRA claim against Defendant Choice or Defendant

ESA arises out of the Defendants' respective activities in Oregon. Under the second prong of the

specific jurisdiction analysis, Ninth Circuit courts apply a "but for" test to determine whether

Plaintiff would not have been injured "but for" a defendant's forum-related conduct. *Panavision*

*Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

Plaintiff has not claimed she was trafficked at properties operated by Defendant Choice

or Defendant ESA in the state of Oregon. In her complaint, Plaintiff only contends she was

trafficked at hotels owned by ESA and Choice in Washington. ECF 1 at ¶¶ 13(j), 14(j).

Nevertheless, Plaintiff argues that specific jurisdiction exists because Choice and ESA advertise,

establish, and control branded properties in Oregon. Plaintiff further contends that the exercise of

jurisdiction is reasonable because Defendants' failure to implement, educate, or train their hotels

to prevent sex trafficking allowed Plaintiff to be trafficked throughout Oregon and Washington.

ECF 51 at 29; ECF 82 at 11. Thus, according to Plaintiff, the results of Choice and ESA's tortious conduct "took effect" in Oregon. ECF 51 at 29; ECF 82 at 12. But Plaintiff's TVPRA claims against Choice and ESA arise from Defendants' alleged failures at two hotels in the state of Washington. Plaintiff has not demonstrated that "but for" Choice or ESA's conduct directed toward Oregon that Plaintiff would not have suffered her alleged harm in Washington. Furthermore, neither Choice nor ESA would reasonably anticipate being haled into an Oregon court to defend claims related to the allegedly deficient conduct of Washington hotels.

This Court lacks general and specific personal jurisdiction over Defendants Choice and ESA for this dispute. Accordingly, the claims against Choice and ESA are dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

In the alternative, Plaintiff requests that this Court allow for jurisdictional discovery. District courts have broad discretion in determining whether to permit jurisdictional discovery. *Boschetto*, 539 F.3d at 1020. Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* However, a court need not permit discovery when a plaintiff's claim of personal jurisdiction appears "both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir.1995) (internal quotation marks omitted). Plaintiff has not alleged A.B. was trafficked at Choice or ESA properties in Oregon, nor has she explained how jurisdictional discovery might demonstrate that Choice or ESA are subject to personal jurisdiction in Oregon. This Court declines Plaintiff's request for jurisdictional discovery.

**B.**    **Defendants' Motions to Dismiss under FRCP 12(b)(6)**

The remaining Defendants Hilton, Wyndham, Marriott, and Red Lion argue that Plaintiff's complaint should be dismissed because the complaint (1) fails to state a claim under the TVPRA and (2) impermissibly relies on group or "shotgun" pleading. ECF 14, 15, 17, 27. A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.*, Inc., 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.,* 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting

*Iqbal*, 556 U.S. at 678) (quotation marks omitted).

### 1. TVPRA Claim

Defendants Hilton, Wyndham, Marriott, and Red Lion argue that Plaintiff has not stated a

claim for relief against them under the TVPRA's civil liability provision, 18 U.S.C. § 1595.

Specifically, they contend that Plaintiff has failed to plead all requisite categories of knowledge

set forth in the statute.

18 U.S.C. 1595(a) states that a person who is the victim of sex trafficking under 18

U.S.C. §§ 1581 et seq:

> may bring a civil action against the perpetrator *(or whoever
> knowingly benefits, financially or by receiving anything of value
> from participation in a venture which that person knew or should
> have known has engaged in an act in violation of this chapter)* in
> an appropriate district court of the United States and may recover
> damages and reasonable attorney fees.

18 U.S.C. § 1595(a) (emphasis added). In 2003, Congress enacted § 1595 to provide a private

right of civil action for victims of sex trafficking. *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th

Cir. 2011). The 2003 law did not permit recovery against individuals who financially benefit

from participation in the trafficking venture; this cause of action was added in the 2008

amendment. *Id*. at 1094 n.1. Under § 1595, victims may bring civil actions for damages for

criminal trafficking violations defined under § 1591. *See Noble v. Weinstein*, 335 F. Supp. 3d

504, 515–17 (S.D.N.Y. 2018) (citing *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)). The meaning of §

1595 is plain and unambiguous, and both § 1591 and § 1595 contain expansive language that the

courts should interpret broadly. *See id.*; *see also A.B. v. Marriott Int'l, Inc.,* No. 19-5770, 2020

WL 1939678, at *14 (E.D. Penn. April 22, 2020) ("As a remedial statute, we construe the Act liberally.").

To state a financial beneficiary claim under § 1595(a), Plaintiff must allege facts from which the Court can reasonably infer that Defendants Hilton, Wyndham, Marriott and Red Lion (1) "knowingly benefit[ed] financially or by receiving anything of value from" (2) participation in a venture they "knew or should have known has engaged in" sex trafficking. Plaintiff alleges Defendants are directly and indirectly liable under the statute. Defendants argue that Plaintiff fails to allege sufficient facts to support the elements of a TVPRA claim for a theory of direct or indirect liability.

### a. Direct Liability

#### i. Knowingly Benefits Financially

Defendants contend they did not knowingly benefit financially from Plaintiff's sex trafficking venture. *See* ECF 14 at 12–13; ECF 15 at 25–27; ECF 17 at 10–11; ECF 27 at 19–20. They argue that financial benefits that do not stem directly from the alleged trafficking itself, and that are not received in exchange for participating in the alleged trafficking, are not sufficient.[3] ECF 14 at 12; ECF 15 at 26; ECF 17 at 10; ECF 27 at 19. Defendants further assert that receiving royalties from independently owned and operated hotels is not enough to show that

---

[3] Defendants Wyndham and Red Lion specifically argue that at most they benefited from an indirect franchisor relationship (presumably through a subsidiary, the hotel franchisor) with an independent third-party franchisee which in turn may have paid royalties to the franchisor. ECF 17 at 10 (Wyndham); ECF 27 at 19–20 (Red Lion). Marriott, as franchisor, receives a royalty from the overall revenues of the Residence Inn Portland Airport, but contends that there are no facts alleged which would plausibly show that it had any reason to suspect that the rooms were being used to commit sex trafficking crimes as alleged in Plaintiff's Complaint. ECF 14 at 12. Hilton argues that there are no alleged facts nor plausible allegations to be made that Hilton financially benefited from sex trafficking at its branded properties. ECF 15 at 19.

they "knowingly benefit[ed] financially." *See* ECF 14 at 12; ECF 15 at 26; ECF 17 at 10; ECF 27 at 19.

To accept Defendants' interpretation of the "knowingly benefits financially" element of a § 1595 claim, however, would be to change the scienter requirement Congress intended for its civil cause of action under the TVPRA. Defendants attempt to impose a requirement of "actual knowledge" from criminal sex trafficking into the civil statute even though § 1595 does not require it. The "knowingly benefits financially" element of § 1595 "merely requires that Defendant knowingly receive a financial benefit" and the rental of a hotel room—or royalties from that rental—constitutes a financial benefit sufficient to meet this element. *H.H. v. G6 Hosp.*, LLC, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see A.B.*, 2020 WL 1939678, at *14–15; *Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, *4 (N.D. Cal. July 30, 2020); s*ee cf. Gilbert v. United States Olympic Committee*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[] the party to benefit from the [forced] labor or services for liability to attach").

In this case, Plaintiff alleges that Defendants benefited financially "from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was trafficked." ECF 1 at ¶¶ 10(h), 11(h), 12(h), 15(h); *see also id.* at ¶¶ 2, 94, 97. Plaintiff alleges that Defendants benefited from Plaintiff's trafficking each time they received royalty payment for rooms in which she was being kept at the Defendants' branded properties. *See id.* at ¶ 102. At the pleading stage, Plaintiff's allegations are sufficient to meet the "knowingly benefits" element of a civil claim under § 1595 of the TVPRA.

### ii. Participation in a Venture Which Defendants Knew or Should Have Known Engaged in Sex Trafficking

This Court next considers whether Plaintiff alleges sufficient facts to plausibly claim Defendants "participated in a venture" which Defendants knew, or should have known, engaged in sex trafficking. Plaintiff's theory is that Defendants participated in a venture "by participating in, and facilitating, the harboring and providing of A.B. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions." *Id.* at ¶ 101. Plaintiff argues that she alleges facts showing Defendants "participated in a venture" because their branded hotels rented rooms to people they knew or should have known were engaged in sex trafficking. *See* ECF 32 at 22; ECF 42 at 18; ECF 43 at 25; ECF 46 at 21. Plaintiff further alleges each Defendant facilitated and allowed trafficking through its practices, policies and procedures. ECF 1 at ¶¶ 67(b)–(c), 68(f)–(g), 69(b)–(c), 70(c)–(d), 71(b)–(c).

Before determining whether Plaintiff has sufficiently pleaded Defendants' participation in a venture, this Court addresses the parties' dispute as to whether "participation" requires actual knowledge of the sex trafficking venture or the performance of some "overt act" in furtherance of the venture. ECF 14 at 14–15; ECF 15 at 23; ECF 17 at 11–12; ECF 27 at 20. At least one court has applied the definition of "participation in a venture" from the criminal liability section of the TVPRA, § 1591, to a claim for civil liability under § 1595. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," § 1591(e)(4), and defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." § 1591(e)(6). In that decision, the court required a plaintiff to show "some participation in the sex trafficking act itself" that was "undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking

venture." *See Noble*, 335 F. Supp. 3d at 524 (additional citations omitted). Several other courts, however, have rejected the application of the criminal definition to civil claims under the TVPRA. *See, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019); *A.B. v, Marriot Int'l, Inc.*, No. 19-cv-5770, 2020 WL 1939678, at *12–13 (E.D. Pa. Apr. 22, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214 at *3 (N.D. Cal. July 30, 2020).

This Court agrees with statutory construction analysis in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d at 969, which has been adopted or applied by multiple courts, see, e.g., *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794 at *1 (N.D. Cal. June 5, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214 at *3. The *M.A.* court reasoned that applying the definition of "participation in a venture" from the criminal liability section of the TVPRA, § 1591, to a civil claim under § 1595 "would void the 'should have known' language in the civil remedy." 425 F. Supp. 3d at 969. The court went on to state that "such a construction would [be a] violation of the 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Id.* (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *see also J.C.*, 2020 WL 3035794 at *1 n.1; *B.M.*, 2020 WL 4368214 at *3. Plaintiff therefore is not required to allege actual knowledge of a sex trafficking venture or the performance of an overt act in order to sufficiently plead the "participation in a venture" element of her § 1595 claim. *See A.B.*, 2020 WL 1939678 at *13 (declining to apply the "participation in a venture" element from the criminal offense defined by Congress in § 1591 to a claim or civil remedy).

This Court now considers whether Plaintiff has plausibly alleged that Defendants participated in a venture which they knew or should have known engaged in sex trafficking. Plaintiff alleges that Defendants participated in the venture by providing lodging to individuals that Defendants knew or should have known engaged in the sex trafficking of Plaintiff. ECF 1 at ¶¶ 89, 91. Plaintiff argues that each Defendant knew or should have known of Plaintiff's trafficking because Defendants were generally aware of trafficking occurring at their branded properties, and there were sufficient indicia that Plaintiff was being trafficked.

Plaintiff contends that Hilton, Wyndham, Red Lion (not franchisors, but parent companies or corporate affiliated companies) and Marriott (franchisor) were generally aware that acts of sex trafficking take place in their branded hotels.  ECF 1 at ¶¶ 67–71. Plaintiff alleges that each Defendant had actual or constructive knowledge of sex trafficking at their properties, citing publicly available news articles and online reviews which describe sex trafficking occurrences at Defendants' branded hotels across the United States. *Id.* at ¶¶ 67(j), 68(n), 69(j), 71(j). But the complaint cites no news articles or online reviews describing sex trafficking at the specific hotel properties at issue in this case. *See, e.g.*, *id.* at ¶¶ 67(j)(ii) (referencing news article which describes sex trafficking at Hilton branded property in Colorado), 68(n)(iv) (listing online hotel reviews that describe prostitution at Wyndham branded properties in Florida and South Carolina). Plaintiff further alleges that each Defendant knew or should have known that the hotel properties where Plaintiff was allegedly trafficked were located in areas known for high incidence of crime and prone to sex trafficking activity. *Id.* at ¶¶ 67(d), 68(d), 69(d), 71(d).

Plaintiff also alleges the following specific facts about her trafficking:

- There were bottles of lubricant, boxes of condoms, and abundant used condoms visible to any employee who entered Plaintiff's room, as well as excessive requests for linens and towels. *Id.* at ¶¶ 79, 82.

- Payments for Plaintiff's rooms were made with cash or debit card and often booked with the use of an employee discount code. *Id.* at ¶ 78.

- Plaintiff's physical appearance showed signs of being trafficked (e.g., malnourished, not making eye contact, having little to no luggage, wearing a tank top and "booty shorts" to open the front lobby door for men late at night). *Id.* at ¶¶ 77, 82.

- There was constant and voluminous foot traffic of unregistered male guests entering and leaving Plaintiff's room. *Id.* at ¶ 77.

These allegations, even when viewed in the light most favorable to Plaintiff, fall short of plausibly alleging Defendants knew or should have known of the alleged trafficking of Plaintiff A.B. on their corresponding properties. First, although Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants. *See S.J. v. Choice Hotels International, Inc.,* No. 19-cv-6071(BMC), 2020 WL 4059569, *5 (E.D.N.Y. July 20, 2020) (noting that § 1595 "speaks in singular terms— 'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter'" means knowledge of a general sex trafficking problem is not sufficient and thus finding that hotel franchisor defendants could not be held directly liable under TVPRA) (emphasis in original). General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff.

Second, while factual allegations listing indicia of trafficking (i.e., condition of the hotel room, frequent male visitors) may support a theory that a hotel where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking, the complaint fails to allege facts as to how Defendants Hilton, Wyndham, Red Lion, and Marriot—the parent company, corporate affiliate, or franchisor of the hotel—were aware of these facts. Plaintiff has not brought suit against the

hotels themselves. To support her direct liability theory, Plaintiff must allege facts showing how Hilton, Wyndham, Marriott, and Red Lion received notice that Plaintiff A.B. was trafficked at their respective properties and she has not done so. Accordingly, Plaintiff has not alleged facts sufficient to state a claim for direct liability under the TVPRA against defendants Hilton, Wyndham, Marriott, and Red Lion.

### b.  Indirect Liability

Defendants next argue that Plaintiff fails to allege they are vicariously liable for the actions of the branded hotel properties and their staff based on agency theory, as joint employers of the hotel employees, or under the alter ego doctrine.

### i.  Actual Agency

Plaintiff contends Defendants were in actual or apparent agency relationships with the hotels where the alleged sex trafficking occurred. To state a claim for vicarious liability under an agency theory, Plaintiff must plausibly allege that (1) Defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595.

The TVPRA does not address the issue of indirect or vicarious liability. Under traditional rules of statutory construction, "statutes are presumed not to disturb the common law, 'unless the language of the statute [is] clear and explicit for this purpose.'" *State Eng'r of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.,* 339 F.3d 804, 814 (9th Cir. 2003) (quoting *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Virginia,* 464 U.S. 30, 35–36 (1983). Ninth Circuit courts have applied the federal common law of agency in cases where a federal statute does not otherwise provide direction. *Mavrix Photographs LLC v. Live Journal, Inc.*, 873 F. 3d 1045, 1054 (9th Cir. 2017) (applying federal common law of agency to copyright claim); *U.S. Equal Emp. Opp. Comm. v. Global Horizons, Inc.*, 915 F.3d 631, 638–39 (9th Cir. 2019) (relying on federal common law of agency for Title VII claim); *see*

PAGE 19 – OPINION AND ORDER

*also J.C.*, 2020 WL 3035794 at *1 (citing *Meyer v Holley*, 537 U.S. 280, 287–91 (2003) (suggesting without deciding that federal common law of agency governs analysis of vicarious liability under TVPRA). In the pleadings, the parties generally rely on state agency law. Several district courts analyzing TVPRA claims similarly appear to assume that vicarious liability is a question of state law. *See A.B.*, 2020 WL 1939678, at *18 (applying Pennsylvania agency law); *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *S.J.*, 2020 WL 4059569 at *9–11 (applying New York agency law). Nevertheless, finding no statutory basis for vicarious liability to be a question of state law, this Court examines vicarious liability as a question of federal common law, and considers state law precedent persuasive authority.

Ninth Circuit courts apply common law agency principles from the *Restatement (Third) of Agency*. *See, e.g.*, *Mavrix Photographs, LLC v. Live Journal, Inc.*, 873 F. 3d 1045, 1054 (9th Cir. 2017). An actual agency relationship requires "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *See Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (citing *Restatement (Third) of Agency* § 1.01) (2006)). When determining whether a principal has sufficient authority to control the actions of an agent such that the principal may be held vicariously liable for the actions of the agent, the Ninth Circuit considers the following non-exhaustive list of factors:

> 1) the control exerted by the employer, 2) whether the one
> employed is engaged in a distinct occupation, 3) whether
> the work is normally done under the supervision of an
> employer, 4) the skill required, 5) whether the employer
> supplies tools and instrumentalities, 6) the length of time
> employed, 7) whether payment is by time or by the job, 8)
> whether the work is in the regular business of the employer,

> 9) the subjective intent of the parties, and 10) whether the
> employer is or is not in business.

*U.S. v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010); *see also Restatement (Third) of Agency* §

7.07(f).

Defendants argue that Plaintiff fails to sufficiently allege an actual agency relationship

because the allegations in the complaint merely illustrate a franchisor or holding company's right

to control its brand. Under Oregon law, a franchisor may only be held accountable for the acts of

its franchisee if the franchisor controls the day-to-day operation of the franchisee, meaning it

controls the method and manner of how the franchisee performs its operations. *See Viado v.

Domino's Pizza*, *LLC*, 230 Or.App. 531, 534 (Or. App. 2009) (citing *Miller v. McDonald's

Corp.,* 150 Or.App. 274 (1997)). The test for vicarious liability further requires that the

franchisor controlled the specific instrumentality or method that caused the plaintiff's injury. *Id*.

at 548. As recognized by the Oregon Supreme Court, "for a principal to be vicariously liable for

the negligence of its nonemployee agents, there ordinarily must be a connection between the

principal's 'right to control' the agent's actions and *the specific conduct* giving rise to the

[claim]." *Vaughn v. First Transit, Inc.,* 346 Or. 128, 138 (2009) (en banc) (emphasis added).

This Court finds Plaintiff has met her burden of alleging a plausible claim for an actual

agency relationship between each of the Defendants and the corresponding hotel properties.

Plaintiff has alleged facts which, if proven, support her theory that Defendants had authority to

control aspects of the hotel operations connected to Plaintiff's claim. For example, Plaintiff

alleges each Defendant exercised control over the means and methods of daily hotel activities by

hosting online bookings, making employment decisions, advertising for employment, controlling

training and policies, specifying how to build and maintain hotel facilities, and regularly

inspecting hotel facilities. ECF 1 at ¶¶ 10(f), 11(g), 12(f), 15(f), 67(g), 68(k), 69(g), 71(g).

Defendants dispute whether they controlled the day-to-day operations of the hotels. Although Plaintiff may ultimately fail to establish the agency allegations, at this stage in the proceeding this Court accepts as true all well-pleaded factual allegations in the complaint and construes them in Plaintiff's favor. *See Daniels-Hall,* 629 F.3d at 998.

Nevertheless, Plaintiff fails to state a claim under an agency theory because the complaint does not plausibly allege that the hotels are liable under § 1595. The TVPRA targets commercial sex activity where children are victimized or "threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The statute "does not address commercial sex generally." *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (Apr. 13, 2020). Although the complaint suggests the hotels had some level of notice that Plaintiff engaged in commercial sex acts, the vague allegations fail to show the hotels knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion.

The deficiencies in the claim, as alleged, are readily discernable when compared to cases where courts have concluded that plaintiffs sufficiently alleged hotels knew or should have known of a plaintiff's trafficking. For instance, Plaintiff does not contend that hotel staff observed her trafficker forcefully bring her to a hotel, attack her, restrain her, or argue with her. *See A.B.*, 2020 WL 1939678, at *14 (alleging staff were aware of "loud altercations" as well as "constant" attacks on the plaintiff); M.A., 425 F. Supp. 3d at 967 (describing desperate cries for pleas of help); *H.H.*, 2019 WL 6682152, at *1 (claiming hotel staff discovered her chained up in the bathroom and ignored her plea for help). The complaint generally states that her trafficker would book the room, and then Plaintiff would walk to the hotel room by herself. ECF 1 at ¶¶ 78, 80, 81. Nor does Plaintiff allege a member of hotel staff had a personal relationship with her

trafficker. *See B.M.*, 2020 WL 4368214, at *6 (alleging front desk employees had personal relationships with traffickers). She merely alleges that she repeatedly "encountered" the same hotel staff who paid no attention to her. *Id.* at ¶¶ 80, 81. Moreover, Plaintiff does not allege she had prominent bruises, brandings, or other visible injuries. *H.H.*, 2019 WL 6682152, at *1 (alleging physical signs of trafficking such as branding, restraints, bruises, and physical deterioration). *See also A.B.*, 2020 WL 1939678, at *4 (alleging prominent bruising and injury on the plaintiff's body). She alleges only that she exhibited signs of malnourishment. ECF 1 at ¶ 90. Although Plaintiff contends she stayed at hotels "repeatedly," she never specifies the duration of her stay or how frequently she returned to a particular hotel location. *Id.* at ¶ 90. *See also A.B.*, 2020 WL 1939678, at *2 (alleging plaintiff was trafficked at hotels for at least a week at a time and staff were aware of her presence). For this reason, it is unclear the extent to which hotel staff would consider certain indicia of trafficking, such as used condoms, bottles of lubricant, and boxes of condoms that were left in the rooms, to be "red flags", or whether staff would discover the items while Plaintiff stayed at the hotel. *Id.* at ¶¶ 79, 82. Plaintiff asserts that she was arrested at Defendants' hotels' properties, but does not otherwise describe the location, the arrest, whether staff observed the arrest, the charge against her, or whether she stayed at the hotels again after her arrest, which might show hotel staff was on notice. *Id.* at ¶ 88. Finally, Plaintiff contends that she would wear "booty shorts" to open the front lobby door for frequent male guests. *Id.* at ¶ 77. But Plaintiff was not a child but a legal adult at the time of her alleged trafficking. *See S.J.*, 2020 WL 4059569, at *5 (finding inappropriate attire on a child indicative of trafficking). It is therefore unclear whether her clothing or the age of her visitors would notify hotel employees that she was a victim of trafficking or whether hotel staff even observed her. *See*

*B.M.*, 2020 WL 4368214, at *1 (alleging hotels should have known that the plaintiff was being trafficked because visitors were not age-appropriate for a minor).

These vague allegations, even when taken as true and construed in Plaintiff's favor, prevent this Court from concluding that the hotels at issue had constructive knowledge of the trafficking of Plaintiff. For this reason, as plead, Plaintiff has not stated a claim of actual agency under the TVPRA.

### ii.  Apparent Agency

Defendants also argue that Plaintiff fails to allege facts to support an apparent agency theory. To establish liability based on apparent agency, Plaintiff must show that manifestations by the Defendants led her to believe that the hotels were agents of the respective Defendants, and that Plaintiff relied on that belief when engaging with the hotels. *Restatement (Third) of Agency* § 2.03 (2006). *See also id.* at § 2.03 cmt. c. ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal."). In the complaint, Plaintiff alleges each Defendant held out its respective branded hotel to the public as possessing authority to act on its behalf. ECF 1 at ¶¶ 67(h); 68(l); 69(h); 71(h). But Plaintiff has not alleged she relied on any representation by Defendants when engaging with the branded hotels. Plaintiff's claim is premised on the notion that she was taken to the hotels against her will to be sex trafficked. Therefore, an apparent agency theory of liability does not comport with the underlying facts of this case. This Court finds Plaintiff has failed to allege the elements of apparent authority.

### iii.  Joint Employer

Plaintiff also contends Defendants are liable as joint employers of hotel employees. ECF 1 at ¶¶ 10(b); 11(c); 12(b); 15(b). Two or more parties constitute joint employers if the employers share or co-determine the essential terms and conditions of employment. *See Carrier*

*Corp. v. N.L.R.B.*, 768 F.2d 778, 781 (6th Cir. 1985). Courts use at least three different tests to analyze joint employment under federal statutes. *See U.S. Equal Emp. Opp. Comm. v. Global Horizons, Inc.*, 915 F.3d 631, 638–39 (9th Cir. 2019) (outlining the common law test, the "economic realities" test, and the hybrid test for joint employment status); *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (listing elements of "economic realities" test). The Ninth Circuit has acknowledged, however, that the various joint employment tests have little functional difference and usually produce the same outcomes. *Global Horizons,* 915 F.3d at 639. Ultimately, joint employment tests are fact-intensive inquiries that turn on the level of control employers may exercise over employees. *See Bonnette*, 704 F.2d at 1470 (applying the "economic realities" test for FLSA joint employer status, which considers factors such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records"); *Global Horizons, Inc.*, 915 F.3d at 639, 641 (finding the element of control determinative).

This Court has located no controlling precedent that states whether a defendant may be held liable under the TVPRA as a joint employer. When a statute is silent on the issue of joint employment, the Ninth Circuit has analyzed the employment relationship under common law agency principles. *See id.* The element of control that one may exercise over the work of another is the "principle guidepost." *Id.* at 638. Plaintiff alleges Defendants are joint employers "with a high degree of interrelated, intermingled, and unified operations" with the hotel properties where Plaintiff was trafficked. ECF 1 at ¶¶ 10(b) (Hilton), 11(c) (Wyndham), 12(b) (Marriot), 15(b) (Red Lion). Plaintiff further claims Defendants have authority to exercise control over conditions of employment such as training, setting employee wages, advertising for employment, and

making employment decisions. ECF 1 at ¶¶ 67(g), 68(k), 69(g), 71(g). Plaintiff has sufficiently alleged Defendants may be held liable as joint employers. Even so, Plaintiff fails to state a plausible claim under a joint employment theory because, as previously discussed, the complaint fails to show that Defendants, their respective hotels, or the hotel staff knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion.

### iv.  Alter Ego

Finally, Defendants argue Plaintiff has failed to allege facts to support an alter ego theory of vicarious liability. In order to apply the alter ego doctrine or pierce the corporate veil, the court must find "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984). In the complaint, Plaintiff includes no allegations specific to an alter ego theory of liability. Nor does Plaintiff include allegations for this Court to infer the hotels at issue and Defendants have unified ownership. This Court finds Plaintiff has failed to state a plausible claim for liability under an alter ego theory.

### 2.  Shotgun Pleading

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the pleading standard under Rule 8 "does not require 'detailed factual allegations,'. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation marks omitted)).

Pleadings that seek to overwhelm defendants with an unclear mass of allegations and make it difficult to impossible for the defendants to make informed responses to the plaintiff's allegations are considered "shotgun" pleadings. *See Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, No. 3:14-cv-1083-AC, 2015 WL 2381611, at *15 (D. Or. May 19, 2015). Another type of "shotgun" pleading is a complaint that asserts claims against "multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at *2 (W.D. Wash. Jan. 3, 2017) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Finally, a complaint may constitute impermissible "shotgun" pleading if it fails to connect its factual allegations to the elements comprising plaintiff's claims such that it denies the parties adequate notice of the allegations supporting each cause of action. *See Lackey v. Ray Klein, Inc.,* No. C19-590-RSM, 2019 WL 3716454, at *5 (W.D. Wash. Aug. 7, 2019); *Hoffman v. Transworld Sys. Incorporated,* No. C18-1132-JCC, 2018 WL 5734641 at *4 (W.D. Wash. Nov. 2, 2018).

Defendants argue that Plaintiff impermissibly relies on shotgun pleadings because the complaint makes certain allegations against Defendants collectively. To Defendants' point, the allegations describing the sex trafficking of Plaintiff are collectively plead against all Defendants and do not contain a high level of specificity as to what occurred at each hotel property. *See, e.g.*, ECF 1 ¶¶ 72–98. Moreover, Plaintiff fails to allege when she visited the hotels at issue, how frequently she visited, or the duration of her stays. *See id.* Plaintiff has, however, identified specific locations where the alleged trafficking occurred, a time frame for the allegations, and included factual allegations describing her victimization. Because this Court dismisses the complaint on other grounds, this Court need not reach a determination on the issue of "shotgun" pleading. To the extent Plaintiff intends to file an amended complaint, Plaintiff is instructed to

plead her interactions with each Defendant with sufficient specificity so that Defendants may defend against these claims.

## C.    Defendant Hilton's Motion for Dismiss under FRCP 21

Defendant Hilton alternatively moves to be dismissed from this action as an improper party under Fed. R. Civ. P. 21. ECF 15 at 8, 13–16. Under Rule 21 of the Federal Rules of Civil Procedure, "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Although Rule 21 does not define misjoinder, "federal courts have uniformly held that misjoinder [under Rule 21] occurs when a single party or multiple parties fail to satisfy the conditions for permissive joinder set forth in Federal Rule of Civil Procedure 20(a)." *John S. Clark Co., Inc. v. Travelers Indem. Co. of Ill.*, 359 F.Supp. 2d 429, 437 (M.D.N.C. 2004) (citing cases). Rule 21 therefore applies only if the claims asserted against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact. *See* Fed. R. Civ. P. 20(a); *Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.,* 916 F. Supp. 1024, 1029 (D. Nev. 1996) (internal quotation omitted). District courts have broad discretion under Rule 21 to dismiss an improper party. *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977).

Hilton argues it is an improper defendant in this case because it is far removed in the corporate structure from its branded hotel identified in this action.[4] ECF 15 at 13. Hilton asserts that it is neither a hotel owner nor a hotel franchisor; rather, it is a holding company that only manages and issues stocks. *Id.* Hilton further claims it conducts no substantive operating activities. *Id.* Hilton also argues the complaint is devoid of allegations that support piercing the

---

[4] As described generally in Plaintiff's complaint, Hilton's subsidiaries enter into franchise agreements with franchisees, and those franchisees in turn are authorized to own and operate hotels under the Hilton brand. *See* ECF 1 at ¶ 58, ECF 15 at 12.

corporate veil between Hilton and its franchisor subsidiary. ECF 15 at 13–14. For these reasons, Hilton contends Plaintiff has failed to allege that it is directly liable or indirectly liable under § 1595(a) of the TVPRA. In support of this argument, Hilton submits a declaration describing its operations and the managing operations performed by Hilton's subsidiaries. ECF 15-1 at 2.

Hilton's arguments for Rule 21 dismissal largely restate its arguments for dismissal under Rule 12(b)(6). Hilton seeks to bolster its arguments by submitting an affidavit that would be impermissible to consider under a motion to dismiss. Hilton does not contend that the claims against it did not arise from the same transaction or occurrence as those against the other Defendants, nor does Hilton assert that the claims share no common issue of law or fact. This is an improper use of Rule 21. *See Garner v. Behrman Brothers IV, LLC,* 260 F. Supp. 3d 369, 383 (S.D.N.Y. 2017) (denying parent companies' request to be dismissed under Rule 21 when the parent companies attempted to bypass standards of review for motion to dismiss for failure to state a claim by reiterating arguments concerning the companies' legal status as employers under Department of Labor standards); *Afa Polytek (N. Am.) Inc. v. Clorox Co.,* No. 2:13-CV-01633-RMG, 2014 WL 12608562, at *3 (D.S.C. Jan. 17, 2014) (declining to dismiss defendants under Rule 21 based on the defendants' statements in affidavits that factual allegations in the complaint were false because "Fed. R. Civ. P. 21 is not a substitute for summary judgment"). This Court declines to exercise its discretion to dismiss Defendant Hilton under Rule 21.

**D.     Motions to Strike**

Because this Court dismissed the claims against all Defendants, this Court need not address the alternative motions to strike filed by Defendants Choice and Red Lion. See ECF 27, 37.

**E.      Anonymity Under Fed. R. Civ. P. 10(a)**

Because Plaintiff's claims are dismissed with leave to amend, this Court addresses her request to proceed under a pseudonym. ECF 1 at ¶ 9(b). Plaintiff pleads that she is a victim of sex trafficking and due to the "sensitive nature of the issues" requests this Court to grant a protective order pursuant to Federal Rule of Civil Procedure 26(c) to permit her to proceed under a pseudonym. ECF 1 at ¶¶ 9(a)–(b).

Under Federal Rule of Civil Procedure 10(a), a complaint must "name all the parties." Fed. R. Civ. P. 10(a). A party may only proceed with a pseudonym in court proceedings "when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Doe 130 v. Archdiocese of Portland in Oregon*, No. CV. 07-1732-PK, 2008 WL 656021, at *1 (D. Or. Mar. 6, 2008) (citation omitted). The Ninth Circuit does not require a plaintiff to obtain leave to proceed anonymously before filing an anonymous pleading. *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011) ("Although some Circuits require plaintiffs to obtain leave of the court before filing an anonymous pleading, the Ninth Circuit does not.").

Plaintiff properly requested permission to proceed anonymously in her complaint. *See* ECF 1 at ¶ 9. This Court will allow Plaintiff to proceed anonymously in this case because this Court finds the need for anonymity outweighs any prejudice to the Defendants and the public.

## CONCLUSION

For the reasons stated above, Defendant Choice's Motion to Dismiss for Lack of Jurisdiction is GRANTED, and Defendant Choice's Motion to Dismiss for Failure to State a Claim and Motion to Strike are DENIED AS MOOT. ECF 37. Defendant ESA's Motion to Dismiss for Lack of Jurisdiction, ECF 72, is GRANTED and Defendant ESA's Motion to Dismiss for Failure to State a Claim, ECF 74, is DENIED AS MOOT. As explained above, the

Motions to Dismiss for Failure to State a Claim filed by Defendants Hilton, Wyndham, Marriott, and Red Lion are GRANTED WITH LEAVE TO AMEND. ECF 14, 15, 17, 27. The Motion to Dismiss pursuant to Fed. R. Civ. P. 21 filed by Hilton is DENIED. ECF 15. Because this Court has dismissed the claim against Defendant Red Lion, the Motion to Strike filed by Defendant Red Lion is DENIED AS MOOT. ECF 27. Plaintiff may file an amended complaint within 30 days of the date of this order. *See* Fed. R. Civ. P. 15(a)(2); *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1116 (9th Cir. 1975).

 **IT IS SO ORDERED**.

 DATED this 8th day of September, 2020.


        /s/ Karin J. Immergut
        Karin J. Immergut
        United States District Judge