IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **A.B.**, an individual, | Case No. 3:19-cv-01992-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WYNDHAM HOTELS & RESORTS, INC.; MARRIOTT INTERNATIONAL, INC.; and RED LION HOTELS CORPORATION**, | |
| Defendants. | |

**IMMERGUT, District Judge.**

Before the Court are Defendants Red Lion, Wyndham, and Marriott's Motions to Dismiss for Failure to State a Claim under Rule 12(b)(6) (ECF 106, 107, 108) and, in the alternative, Defendant Red Lion's Motion to Strike under Rule 12(f) (ECF 106).

Plaintiff A.B. initially filed this action on December 9, 2019, against six hotel chains: Hilton Worldwide Holdings Inc. ("Hilton"), Wyndham Hotels & Resorts, Inc. ("Wyndham"), Marriott International, Inc. ("Marriott"), Choice Hotels International, Inc. ("Choice"), Extended Stay America, Inc. ("ESA"), and Red Lion Hotels Corporation ("Red Lion"). ECF 1. Plaintiff claimed each Defendant violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, by profiting from her sex trafficking. *Id*. On September 8, 2020,

PAGE 1 – OPINION AND ORDER

this Court granted Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendants Choice and ESA. ECF 99. Further, finding that the original Complaint failed to allege sufficient facts to support the elements of a TVPRA claim for a theory of direct or indirect liability, this Court granted Motions to Dismiss for Failure to State a Claim filed by Defendants Hilton, Marriott, Wyndham, and Red Lion with leave to amend. *Id*.

On October 8, 2020, Plaintiff filed an Amended Complaint against only Defendants Wyndham, Marriott, and Red Lion. ECF 103. The Amended Complaint again alleges that Defendants violated the TVPRA by "knowingly benefit[ing] from participating in a venture they knew was engaged in illegal sex trafficking." *Id*. at ¶ 9. On November 23, 2020, Wyndham, Marriott, and Red Lion each moved to dismiss the Amended Complaint for failure to state a claim. ECF 106, 107, 108. In the alternative, Red Lion moved to strike the Amended Complaint. ECF 106.

For the reasons set forth below, this Court GRANTS Defendants' Motions to Dismiss for Failure to State a Claim with prejudice. Red Lion's alternative Motion to Strike is DENIED as moot.

## BACKGROUND

Plaintiff's core allegations largely mirror those in the original Complaint. Plaintiff was 22 years old when she was first trafficked through Oregon and Washington. ECF 103 at ¶ 4. From approximately November 2012 through March 2013, Plaintiff alleges she was sold by her trafficker for sex at four different hotels, including the Days Inn® in Vancouver, Washington ("Days Inn Vancouver") and the Ramada® in Portland, Oregon ("Ramada Portland"), both Wyndham branded properties; the Residence Inn® located near Portland International Airport in Oregon, a Marriott branded property ("Residence Inn Portland Airport"); and the Red Lion Inn®

Case 3:19-cv-01992-IM   Document 115   Filed 03/31/21   Page 3 of 19

in Salem, Oregon, a Red Lion branded property ("Red Lion Salem") (collectively, "Defendants' hotels"). *Id.* at ¶¶ 94, 114 (Wyndham); 14(a), 132 (Marriott); 151 (Red Lion).

Plaintiff alleges that during the five-month period during which she was trafficked, there were "apparent red flags" of Plaintiff being sex trafficked at Defendants' hotels. *Id.* at ¶¶ 112, 130, 149, 166. These signs of sex trafficking included Plaintiff repeatedly staying at the hotel without any luggage, always avoiding eye contact or interactions with the staff, and showing physical signs of malnourishment. *Id.* at ¶ 172. In addition, Plaintiff's room exhibited signs of commercial sex work: abundant used condoms throughout the room and in the trash, bottles of lubricants, boxes of condoms, and numerous requests for towels and linens. *Id.* at ¶¶ 106, 109, 125, 128, 143, 147, 161, 164. Plaintiff avers that male guests frequently visited her room and left shortly after arrival. *Id.* at ¶¶ 105, 124, 142, 160. Late at night, Plaintiff would open the front lobby door for unregistered male guests without being questioned by employees. *Id.*

Plaintiff alleges that her trafficker always booked the rooms directly from the front desk or online using his debit card or cash. *Id.* at ¶¶ 100, 119, 136, 155. After booking the room, her trafficker would get two keys and take one key to Plaintiff, who would be waiting in the car. *Id.* at ¶¶ 100, 119, 136. Plaintiff's trafficker used hotel WiFi to post advertisements, talk to "johns," and watch and record Plaintiff's sexual acts. *Id.* at ¶¶ 102, 121, 139, 157.

After waiting in the car while her trafficker checked in, Plaintiff would walk to the hotel room by herself, never making eye contact or speaking to anyone. *Id.* at ¶¶ 100, 107, 119, 126. Plaintiff alleges her trafficker would book the hotel rooms for between one and four nights at a time before switching locations. *Id*. at ¶¶ 97, 117, 135, 154. Plaintiff was placed at each of

PAGE 3 – OPINION AND ORDER

Defendants' hotels up to twice a month. *Id.*[1] Plaintiff alleges she encountered the same hotel staff over the course of the time she was trafficked for sex at Defendants' hotels and that the hotel staff paid no attention to her. *Id.* at ¶¶ 107–08, 126–27, 145–46, 162–63. Plaintiff alleges she was arrested on Defendants' hotels' property grounds, but does not allege what she was arrested for or whether hotel staff were advised of her arrest. *Id.* at ¶ 170.

Like in the original Complaint, Plaintiff brings a single claim under the TVPRA against each Defendant. *Id.* at ¶¶ 8, 9. As to all Defendants, Plaintiff alleges that each "owns, supervises and/or operates" one of the branded hotels where she was trafficked, and each benefitted financially from room rental and other incidentals recognized by renting rooms in which she was trafficked. *Id.* at ¶¶ 13(k), 13(l), 14(i), 14(j), 15(i), 15(j). Plaintiff alleges that each Defendant had actual and/or constructive knowledge of sex trafficking occurring on its branded properties. *Id.* at ¶¶ 89–93. According to Plaintiff, each Defendant knew or should have known that their branded hotel where Plaintiff was trafficked was in an area "known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff A.B. was trafficked." *Id.* at ¶¶ 91(l), 92(f), 93(f). Each Defendant allegedly failed to implement policies to protect Plaintiff from being trafficked and continues to profit from the business sex trafficking brings. *Id.* at ¶¶ 85–87.

Plaintiff also cites news reports and online reviews to allege that each Defendant had actual or constructive knowledge of sex trafficking occurring at their branded hotels throughout the country and asserts that each Defendant's knowledge facilitated the sex trafficking of Plaintiff. *Id.* at ¶¶ 91(hh)-(ii), 92(y)-(z), 93(z)-(aa). As to the relationship between each

---

[1] The Amended Complaint includes a list of specific dates when Plaintiff may have been trafficked at each of Defendants' hotels. *See* ECF 103 at ¶¶ 95, 115, 133, 152.

Defendant and their branded hotels, Plaintiff contends that they were each in an agency relationship through Defendants' "exercise of an ongoing and systemic right of control over [their branded hotels]" including how their branded hotels conducted daily business. *Id.* at ¶¶ 91(n), 92(h), 93(h). Plaintiff also alleges that each Defendant "held out [its] branded hotels to the public as possessing authority to act on its behalf." *Id.* at ¶¶ 91(p), 92(j), 93(j).

In the Amended Complaint, Plaintiff adds new allegations relating to Defendants' alleged knowledge of Plaintiff's trafficking. Specifically, Plaintiff alleges that Defendants required their branded properties to provide WiFi with cybersecurity measures in place and centralized reservation systems which granted Defendants access to guest information and data. *Id.* at ¶¶ 91(c), 91(n)–(gg), 92(c), 92(i)–(x), 93(c), 93(h)–(y). Through these mandated systems, Defendants allegedly monitored and reviewed data and information from their branded properties which would have alerted them to Plaintiff's circumstances. *Id*. Plaintiff alleges Defendants were able to see indicia of her trafficking, such as unusual bookings from local residents, payments for rooms using cash, consistent access to websites known for sexual exploitation such as backpage.com, live video monitoring by her trafficker, and unusually frequent requests for towels and other items from inventory. *Id*. The Amended Complaint further alleges that Defendants implemented means in which they could monitor customer reviews of prostitution, trafficking, and guest safety issues; customer complaints; and reports of criminal activities. *Id*. Defendants also allegedly provided their branded properties with a platform for employees to report suspicious activities occurring at the hotel to Defendants. *Id*.

As a specific allegation against Wyndham, Plaintiff recalls that at one point her trafficker was kicked out of the Days Inn Vancouver "due to screams from another woman he was trafficking." *Id*. at ¶ 99. Plaintiff further asserts that in 2011, Wyndham's predecessor entity

PAGE 5 – OPINION AND ORDER

Wyndham Worldwide Corporation signed the End Child Prostitution and Trafficking's ("ECPAT-USA") Tourism Child-Protection Code of Conduct (the "Code"), which identifies six steps companies can take to prevent child sex trafficking. *Id.* at ¶¶ 44–46, 91(d). Plaintiff alleges Wyndham did not follow the Code. *Id.* at ¶ 91(d).

As to Defendants Marriott and Red Lion, Plaintiff alleges that at each of their hotels she was forced to share a room with another girl on at least two occasions. *Id.* at ¶¶ 144, 156. Plaintiff and the other girl would alternate in and out of the room meeting "clients" and neither would leave the properties. *Id*. Plaintiff also alleges that her trafficker used an employee discount code when reserving rooms at the Residence Inn Portland Airport, Defendant Marriott's hotel. *Id*. at ¶ 138.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.*, *Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.,* 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not,

however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted).

## DISCUSSION

**A.   Defendants' Motions to Dismiss under FRCP 12(b)(6)**

Defendants Wyndham, Marriott, and Red Lion argue that Plaintiff's Amended Complaint should be dismissed because the Amended Complaint fails to state a claim under the TVPRA's civil liability provision, 18 U.S.C. § 1595. ECF 106, 107, 108. Red Lion further argues the Amended Complaint should be dismissed because it impermissibly relies on group or "shotgun" pleading. ECF 106.

**1.   TVPRA Claim**

18 U.S.C. 1595(a) states that a person who is the victim of sex trafficking under 18 U.S.C. §§ 1581 *et seq*:

> may bring a civil action against the perpetrator *(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)* in

>an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added). In 2003, Congress enacted § 1595 to provide a private right of civil action for victims of sex trafficking. *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011). The 2003 law did not expressly permit recovery against individuals who benefit from participation in the trafficking venture; this cause of action was added in the 2008 reauthorization. *Id*. at 1094 n.1. Under § 1595, victims may bring civil actions for damages for criminal trafficking violations defined under § 1591. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 515–17 (S.D.N.Y. 2018) (citing *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)). The meaning of § 1595 is plain and unambiguous, and both § 1591 and § 1595 contain expansive language that the courts should interpret broadly. *See id.*; *see also A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 189 (E.D. Penn. 2020) ("As a remedial statute, we construe the Act liberally.") (citation omitted).

To state a financial beneficiary claim under § 1595(a), Plaintiff must allege facts from which the Court can reasonably infer that Defendants Wyndham, Marriott, and Red Lion (1) "knowingly benefit[ed], financially or by receiving anything of value from" (2) participation in a venture they "knew or should have known has engaged in" sex trafficking as defined by § 1591. 18 U.S.C. § 1595(a). Section 1591 defines sex trafficking as commercial sex activity either involving a minor or where "force, threats of force, fraud, coercion . . . , or any combination of such means [is] used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a). Notably, the statute "does not address commercial sex activity generally." *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020). Plaintiff alleges Defendants are directly and indirectly liable under the statute. Defendants argue that Plaintiff fails to allege sufficient facts to support the elements of a TVPRA claim for a theory of direct or indirect liability.

PAGE 8 – OPINION AND ORDER

### a. Direct Liability

#### i. Knowingly Benefits Financially

This Court previously held that Plaintiff's original Complaint, ECF 1, alleged sufficient facts to meet the "knowingly benefits" element of a civil claim under § 1595 of the TVPRA at the pleading stage. *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020). Plaintiff's allegations pertaining to Defendants knowingly benefitting financially from Plaintiff's sex trafficking venture remain unchanged in the Amended Complaint. *See* ECF 103 at ¶¶ 2, 8, 9, 13–15, 22, 25, 86–87, 91–95, 110, 169, 175, 177, 184, 185 (alleging Defendants benefited from Plaintiff's trafficking by receiving payment for rooms she was kept in at Defendants' hotels).

Accordingly, this Court finds that Plaintiff's allegations in the Amended Complaint are sufficient to meet the "knowingly benefits" requirement for civil claims under § 1595 of the TVPRA.

#### ii. Participation in a Venture Which Defendants Knew or Should Have Known Engaged in Sex Trafficking

Next, this Court considers whether Plaintiff alleges sufficient facts to plausibly claim Defendants "participated in a venture" which Defendants knew, or should have known, engaged in sex trafficking. In line with several other district courts, this Court previously held that Plaintiff is not required to allege that Defendants had actual knowledge of a sex trafficking venture or performed an overt act in furtherance of the venture to satisfy the "participation" element of a civil TVPRA claim. *See A.B.*, 484 F. Supp. 3d at 937 (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019); *A.B. v, Marriot Int'l, Inc.*, 455 F.Supp.3d 171, 186–88 (E.D. Pa. 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL

4368214 at *3 (N.D. Cal. July 30, 2020)). Rather, Plaintiff must allege that Defendants participated in a venture which they knew or *should have known* engaged in sex trafficking. *Id*.

This Court found that Plaintiff's original Complaint, ECF 1, failed to plausibly allege Defendants knew or should have known of the trafficking of Plaintiff on their corresponding properties. *A.B.*, 484 F. Supp. 3d at 938–39. Plaintiff's theory in the original Complaint was that Defendants participated in a venture because their branded hotels rented rooms to people they knew or should have known were engaged in sex trafficking and that each Defendant facilitated and allowed trafficking through its practices, policies, and procedures. *See* ECF 1 at ¶¶ 67(b)–(c), 68(f)–(g), 69(b)–(c), 70(c)–(d), 71(b)–(c); ECF 32 at 22; ECF 42 at 18; ECF 43 at 25; ECF 46 at 21. Plaintiff argued that each Defendant knew or should have known of Plaintiff's trafficking because Defendants were generally aware of trafficking occurring at their branded properties, and there were sufficient indicia that Plaintiff was being trafficked. Specifically, Plaintiff cited publicly available news articles and online reviews which describe sex trafficking occurrences at Defendants' branded hotels across the United States as proof that each Defendant had actual or constructive knowledge of sex trafficking at their properties. ECF 1 at ¶¶ 67(j), 68(n), 69(j), 71(j). However, none of the cited news articles or online reviews described sex trafficking at the specific hotel properties at issue in this case. Plaintiff further alleged that each Defendant knew or should have known that the specific hotel properties where Plaintiff was allegedly trafficked were in areas known for high incidence of crime and prone to sex trafficking activity. *Id.* at ¶¶ 67(d), 68(d), 69(d), 71(d).

Plaintiff's original Complaint also included the following specific facts about her trafficking:

- There were bottles of lubricant, boxes of condoms, and abundant used condoms visible to any employee who entered Plaintiff's room, as well as excessive requests for linens and towels. *Id.* at ¶¶ 79, 82.

- Payments for Plaintiff's rooms were made with cash or debit card and often booked with the use of an employee discount code. *Id.* at ¶ 78.

- Plaintiff's physical appearance showed signs of being trafficked (e.g., malnourished, not making eye contact, having little to no luggage, wearing a tank top and "booty shorts" to open the front lobby door for men late at night). *Id.* at ¶¶ 77, 82, 90.

- There was constant and voluminous foot traffic of unregistered male guests entering and leaving Plaintiff's room. *Id.* at ¶ 77.

This Court found that the original Complaint's allegations, even when viewed in the light most favorable to Plaintiff, fell short of plausibly alleging Defendants knew or should have known of the alleged trafficking of Plaintiff on their corresponding properties. *A.B.*, 484 F. Supp. 3d at 938. First, this Court found that although Plaintiff's allegations indicated that Defendants had notice of sex trafficking generally occurring at their hotels, the original Complaint did not allege facts which sufficiently linked notice of Plaintiff A.B.'s sex trafficking to any of the Defendants. *Id*. (citing *S.J. v. Choice Hotels International, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. July 20, 2020) (noting that § 1595 "speaks in singular terms—'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter'" means knowledge of a general sex trafficking problem is not sufficient and thus finding that hotel franchisor defendants could not be held directly liable under TVPRA) (emphasis in original)). This Court noted that general knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff. *Id*. at 938.

Second, this Court found that while factual allegations listing indicia of trafficking (i.e., condition of the hotel room, frequent male visitors) may support a theory that hotels where

PAGE 11 – OPINION AND ORDER

Plaintiff was trafficked knew or should have known of Plaintiff's trafficking, the original Complaint failed to allege facts as to how Defendants—the parent companies, corporate affiliates, or franchisors of the hotels—were aware of these facts. *Id*. at 938–39. This Court held that to support her direct liability theory, Plaintiff needed to allege facts showing how Defendants received notice that Plaintiff was trafficked at their respective properties and she had not done so. *Id*.

      Plaintiff's Amended Complaint retains the allegations discussed above but includes new allegations which Plaintiff asserts "connect the dots between the Plaintiff's sex trafficking and the Defendants'[] conduct." ECF 111 at 9. Specifically, Plaintiff points to new allegations that Defendants required their branded properties to provide WiFi with cybersecurity measures in place and centralized reservation systems which granted Defendants access to guest information and data. *Id*. Plaintiff alleges that through these mandated systems, Defendants monitored and reviewed data and information from their branded properties which would have alerted them to Plaintiff's circumstances. *Id*. at 9–10. Through this monitoring and review process, Defendants were allegedly able to see indicia of Plaintiff's trafficking, such as unusual bookings from local residents, payments for rooms using cash, consistent access to websites known for sexual exploitation such as backpage.com, live video monitoring by her trafficker, and unusually frequent requests for towels and other items from inventory. *Id*. at 10. Plaintiff further alleges that Defendants implemented means in which they could monitor customer reviews of prostitution, trafficking, and guest safety issues; customer complaints; and reports of criminal activities. *Id*. Defendants also allegedly provided their branded properties with a platform for employees to report suspicious activities occurring at the hotel to them. *Id*.

PAGE 12 – OPINION AND ORDER

This Court finds that, even when viewed in the light most favorable to Plaintiff, the Amended Complaint fails to plausibly allege that Defendants Wyndham, Marriott, and Red Lion participated in a venture which they knew or should have known engaged in sex trafficking. First, Plaintiff bases her allegations about Defendants' ability to monitor and review internet use at their branded hotels on Defendants' current privacy policies, not those in place when Plaintiff was trafficked in 2012 and early 2013. ECF 103 at ¶¶ 91(r)–(gg); 92(l)–(x); 93(l)–(y).[2] Whether Defendants can currently track internet activity at their hotel locations does not speak to the issue of whether they could or did track such activity seven or eight years ago.

Second, even assuming Defendants were able to monitor and review internet activity and reservation data at their hotels as alleged, the facts presented in the Amended Complaint do not plausibly establish that such information would have put Defendants on notice that Plaintiff was being forcibly sex trafficked. As noted above, the TVPRA "does not address commercial sex activity generally." *Doe 1*, 2020 WL 1872335, at *3. The statute targets commercial sex activity only where children are victimized or where "force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The fact that Defendants may have had access to internet and booking data containing some indicia of commercial sex activity at their branded hotel locations is insufficient to establish that Defendants should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion. Further, the TVPRA does not impose an affirmative duty to police and prevent sex trafficking. *A.B. v. Marriott International, Inc.*, 455 F. Supp. 3d 171, 182

---

[2] Plaintiff includes an allegation that Defendant Wyndham has certified a limited number of wireless internet vendors to manage WiFi networks in its hotels "since 2012" but bases all allegations about Defendants' ability to monitor and review internet use on current policies. ECF 103 at ¶ 91(t).

PAGE 13 – OPINION AND ORDER

(E.D. Pa. April 22, 2020) ("We disagree with [plaintiff] to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We do not read the Act as requiring hotels … to affirmatively stop the trafficking."); *see also B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020) ("To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking"). While the pleaded facts suggest that Defendants could have done more with their internet and booking data to investigate and prevent possible trafficking at their branded hotels, they do not plausibly allege that Defendants knew or should have known about Plaintiff's sex trafficking by fraud, force, or coercion at their branded hotel locations.

Plaintiff further points to allegations that Defendants implemented means by which they could monitor customer reviews of prostitution, trafficking, and guest safety issues, which provided notice of Plaintiff's sex trafficking. However, the customer reviews cited in the Amended Complaint do not plausibly suggest Defendants knew or should have known about Plaintiff's trafficking. With respect to Defendant Wyndham, the Amended Complaint contains one TripAdvisor review of the Days Inn Vancouver and five reviews of the Ramada Portland from between 2010 and 2017. ECF 103 at ¶¶ 91(ii)(ii)–(x). Some of the reviews indicate that guests believed prostitution was happening at the hotels. *Id*. However, none of the reviews are from the period Plaintiff alleges she was trafficked at the Days Inn Vancouver or the Ramada Portland (*i.e.*, December 16, 2012 to February 27, 2013, ECF 103 at ¶¶ 95, 115), none reference forcible sex trafficking, and none are allegedly related to Plaintiff or her trafficker. The Amended Complaint contains only one TripAdvisor review about Defendant Marriott's Residence Inn Portland Airport hotel which is not from the period Plaintiff alleges she was trafficked there and there were no reviews provided about Red Lion Salem. *Id*. at ¶¶ 92(z), 93(aa).

PAGE 14 – OPINION AND ORDER

Thus, the new allegations in the Amended Complaint regarding Defendants' alleged ability to monitor and track activities at their branded hotel locations do not cure the deficiencies found in the original Complaint. This Court finds that Plaintiff has not alleged facts sufficient to state a claim for direct liability under the TVPRA against Defendants Wyndham, Marriott, and Red Lion.

### b. Indirect Liability

Defendants next argue that Plaintiff fails to allege they are vicariously liable for the actions of the branded hotel properties and their staff based on an agency theory or as joint employers of the hotel employees.

#### i. Actual Agency

Plaintiff contends Defendants were in actual or apparent agency relationships with the hotels where the alleged sex trafficking occurred. To state a claim for vicarious liability under an agency theory, Plaintiff must plausibly allege that (1) Defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595.

This Court previously found that Plaintiff met her burden of alleging a plausible claim for an actual agency relationship between each of the Defendants and the corresponding hotel properties in the original Complaint. *A.B.*, 484 F. Supp. 3d at 940. The alleged facts from the original Complaint which, if proven, support Plaintiff's theory that Defendants had authority to control aspects of the hotel operations connected to Plaintiff's claim, remain unchanged in the Amended Complaint. Thus, Plaintiff has plausibly alleged that Defendants and their corresponding hotels were in agency relationships.

Nevertheless, Plaintiff fails to state a claim under an agency theory because the Amended Complaint does not plausibly allege that the hotels are liable under § 1595. As discussed above, the TVPRA "does not address commercial sex activity generally." *Doe 1*, 2020 WL 1872335, at

PAGE 15 – OPINION AND ORDER

\*3. In order to state a claim for civil liability under § 1595, Plaintiff must plausibly allege that Defendants or their agents knew or should have known that Plaintiff was engaged in commercial sex activity on their property due to "force, threats of force, fraud, coercion . . . , or any combination of such means." 18 U.S.C. § 1591(a). Although the Amended Complaint suggests the hotels had some level of notice that Plaintiff engaged in commercial sex acts, the vague allegations fail to show the hotels knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force or threats of force, or coercion.

The deficiencies in the claim, as alleged, are readily discernable when compared to cases where courts have concluded that plaintiffs sufficiently alleged hotels knew or should have known of a plaintiff's trafficking within the meaning of 18 U.S.C. § 1591(a). For instance, while the Amended Complaint adds a vague allegation that Plaintiff's trafficker was at some point kicked out of the Days Inn Vancouver because another woman he was trafficking was screaming, ECF 103 at ¶ 99, she does not contend that hotel staff observed her trafficker forcefully bring her to a hotel, attack her, or restrain her.[3] *See, e.g., A.B.*, 455 F. Supp. 3d at 175 (alleging staff were aware of "loud altercations" as well as "constant" attacks on the plaintiff); *M.A.*, 425 F. Supp. 3d at 967 (describing desperate pleas for help); *H.H. v. G6 Hospitality, LLC*, No. 2:19-CV-755, 2019 WL 6682152, at \*1 (S.D. Ohio Dec. 6, 2019) (claiming hotel staff discovered her tied to bed and chained up in the bathroom and ignored her plea for help). The Amended Complaint generally states that her trafficker would book the room, and then Plaintiff would walk to the hotel room by herself. ECF 103 at ¶¶ 100, 119, 136. Nor does Plaintiff allege a member of hotel staff had a personal relationship with her trafficker. *See B.M.*, 2020 WL

---

[3] Plaintiff's allegation that her trafficker was kicked out of the Days Inn Vancouver does not provide a date for this event or any other details regarding the circumstances which led the other trafficking victim to yell or Plaintiff's trafficker to be kicked out. *See* ECF 103 at ¶ 99.

PAGE 16 – OPINION AND ORDER

4368214, at *6 (alleging front desk employees had personal relationships with traffickers). She merely alleges that she repeatedly "encountered" the same hotel staff who paid no attention to her. ECF 103 at ¶¶ 107–08, 145–46, 162–63. Moreover, Plaintiff does not allege she had prominent bruises, brandings, or other visible injuries. *H.H.*, 2019 WL 6682152, at *1 (alleging physical signs of trafficking such as branding, restraints, bruises, and physical deterioration). *See also A.B.*, 455 F. Supp. 3d at 178 (alleging prominent bruising and injury on the plaintiff's body). She alleges only that she exhibited signs of malnourishment. ECF 103 at ¶ 172. Plaintiff asserts that she was arrested at Defendants' hotels' properties, but does not otherwise describe the location, the arrest, whether staff observed the arrest, the charge against her, or whether she stayed at the hotels again after her arrest, which might show hotel staff was on notice. *Id.* at ¶ 170. Plaintiff also contends that she would frequently open the front lobby door for unregistered male guests. *Id.* at ¶ 105. But Plaintiff was a legal adult at the time of her alleged trafficking and it is therefore unclear whether her letting guests into the building would notify hotel employees that she was a victim of trafficking or whether hotel staff even observed her. *See B.M.*, 2020 WL 4368214, at *1 (alleging hotels should have known that the plaintiff was being trafficked because visitors were not age-appropriate for the minor plaintiff). Finally, Plaintiff alleges that she was occasionally forced to share a room with another girl where Plaintiff and the other girl would alternate in and out of the room meeting "clients" and neither would leave the hotel. *Id.* at ¶¶ 144, 156. Plaintiff does not, however, allege that any hotel staff witnessed her alternating in and out of the rooms with the other girl.

These vague allegations, even when taken as true and construed in Plaintiff's favor, prevent this Court from concluding that the hotels at issue had constructive knowledge of the

PAGE 17 – OPINION AND ORDER

trafficking of Plaintiff. For this reason, as plead, Plaintiff has not stated a claim based on actual agency under the TVPRA.

### ii. Apparent Agency

Defendants also argue that Plaintiff fails to allege facts to support an apparent agency theory. To establish liability based on apparent agency, Plaintiff must show that manifestations by the Defendants led her to believe that the hotels were agents of the respective Defendants, and that Plaintiff relied on that belief when engaging with the hotels. *Restatement (Third) of Agency* § 2.03 (2006). *See also id.* at § 2.03 cmt. c. ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal."). In the Amended Complaint, Plaintiff alleges each Defendant held out its respective branded hotel to the public as possessing authority to act on its behalf. ECF 103 at ¶¶ 91(p); 92(j); 93(j). But Plaintiff has not alleged she relied on any representation by Defendants when engaging with the branded hotels. Plaintiff's claim is premised on the notion that she was taken to the hotels against her will to be sex trafficked. Therefore, an apparent agency theory of liability does not comport with the underlying facts of this case. This Court finds Plaintiff has failed to allege the elements of apparent authority.

### iii. Joint Employer

Finally, Plaintiff contends Defendants are liable as joint employers of hotel employees. ECF 103 at ¶¶ 13(f); 14(d); 15(d). This Court previously held that Plaintiff sufficiently alleged Defendants may be held liable as joint employers. *A.B.*, 484 F. Supp. 3d at 943. Even so, Plaintiff fails to state a plausible claim under a joint employment theory because, as previously discussed, the Amended Complaint fails to show that Defendants, their respective hotels, or the

hotel staff knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force or threat of force, or coercion.

### 2. Shotgun Pleading

Defendant Red Lion argues that Plaintiff impermissibly relies on shotgun pleading because the Amended Complaint makes certain allegations against Defendants collectively. ECF 106 at 16–18. Because this Court dismisses the Amended Complaint on other grounds, this Court need not reach a determination on the issue of "shotgun" pleading.

### B. Motion to Strike

Because this Court dismisses the claims against all Defendants, this Court need not address the alternative motion to strike filed by Defendant Red Lion. ECF 106.

## CONCLUSION

For the reasons stated above, the Motions to Dismiss for Failure to State a Claim filed by Defendants Wyndham, Marriott, and Red Lion are GRANTED without leave to amend. ECF 106, 107, 108. Plaintiff was previously afforded leave to amend to allege facts sufficient to state a claim but has failed to do so. Accordingly, leave to amend is denied with prejudice. Because this Court has dismissed the claim against Defendant Red Lion, the Motion to Strike filed by Defendant Red Lion is DENIED AS MOOT. ECF 106.

**IT IS SO ORDERED**.

DATED this 31st day of March, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge